## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AMANDA BETTS,

        Plaintiff

    v.

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY,

        Defendant

Civil Action No. 21-1861 (CKK)

### MEMORANDUM OPINION
(August 10, 2022)

Plaintiff Amanda Betts brings this employment discrimination action against Defendant Washington Metropolitan Area Transit Authority ("Defendant" or "WMATA").  Plaintiff's five-count Complaint raises the following claims: (1) hostile work environment based on sex (female), disability (pregnancy), race (African-American), and retaliation in violation of Title VII of the Civil Rights Act of 1964 and the Rehabilitation Act of 1973[1]; (2) discrimination based on disability (pregnancy) in violation of the Rehabilitation Act; (3) discrimination based on sex (female) in violation of Title VII; (4) discrimination based on race (African-American) in violation of Title VII; and (5) retaliation against protected activity in violation of Title VII.

Pending before the Court is WMATA's [5] Motion to Dismiss or, in the Alternative, for Summary Judgment.  WMATA contends that Plaintiff failed to exhaust her administrative remedies as to her Title VII claims, and that all of her claims are time-barred by Title VII or the Rehabilitation Act.  In its discretion under Federal Rule of Civil Procedure 12(d), the Court shall convert the portions of WMATA's motion addressing these exhaustion and timing requirements

---

[1] The introduction to Plaintiff's Complaint invokes the American with Disabilities Act ("ADA") but none of the asserted counts alleges an ADA a violation.  Compl. ¶ 2, ECF No. 1.

into a motion for summary judgment under Rule 56 and shall consider matters outside the pleadings.  WMATA also argues that Plaintiff fails to state a plausible claim for relief as to each of her claims and, as to her discrimination and retaliation claims, that it has offered legitimate non-discriminatory reasons for its actions.  The Court shall assess these arguments under the framework provided by Rule 12(b)(6).

Upon consideration of the pleadings,[2] the relevant legal authority, and the record as a whole, the Court shall **GRANT IN PART** and **DENY IN PART** WMATA's motion:

- The Court **GRANTS IN PART** summary judgment to WMATA as to Plaintiff's Title VII claims for sex discrimination (Count Three), race discrimination (Count Four), and retaliation (Count Five) due to Plaintiff's failure to exhaust her administrative remedies insofar as these claims rely on the following acts or events: July 2012 transfer assignment, July 2012 denial of two transfer reconsideration requests, surrender of service weapon, alleged verbal harassment that occurred prior to October 31, 2012 (including the alleged interaction in June 2012 with Lieutenant Boehm), and April 12, 2013 dereliction reprimand.  The Court **DENIES** the remainder of WMATA's Motion to Dismiss, or in the Alternative, for Summary Judgment as to Counts Three, Four, and Five.

- The Court **GRANTS IN PART** summary judgment to WMATA as to Plaintiff's Rehabilitation Act Claim for disability discrimination (Count Two) insofar as this claim relies on the following acts or events: July 2012 transfer assignment, July 2012 denial of two transfer reconsideration requests, surrender of service weapon, and alleged verbal harassment that occurred prior to October 31, 2012.   As to the remaining acts underlying Count Two, the Court **GRANTS** WMATA's Motion to Dismiss for failure to state a claim and **DISMISSES** Count Two of the Complaint.

- The Court **GRANTS** WMATA's Motion to Dismiss for failure to state a claim as to Plaintiff's hostile work environment claim under the Rehabilitation Act and Title VII (Count One) and **DISMISSES** Count One of the Complaint.

---

[2] The Court's consideration has focused on the following:
- WMATA's Memorandum of Points & Authorities in Support of its Motion to Dismiss Plaintiff's Complaint, or in the Alternative, Motion for Summary Judgment ("Def.'s Mot."), ECF No. 5-1;
- Plaintiff's Opposition to WMATA's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment ("Pl.'s Opp'n"), ECF No. 7; and
- WMATA's Reply to Plaintiff's Opposition to its Motion to Dismiss Plaintiff's Complaint, or in the Alternative, its Motion for Summary Judgment ("Def.'s Reply"), ECF No. 8.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision.  *See* LCvR 7(f).

# I.   BACKGROUND

As addressed by the Court *infra* Section III, the Court shall convert only the portions of WMATA's pending motion addressing exhaustion and statutory timing issues to a motion for summary judgment.   In presenting the facts pertinent to the Court's analysis of WMATA's exhaustion and timing arguments,  the Court considers not only the pleadings, but also the evidence submitted by the parties.   The Court shall also cite directly to the record, where appropriate, to provide additional information.   As to the balance of WMATA's arguments, the Court shall assess the motion pursuant to Rule 12(b)(6), and therefore shall consider only "the facts alleged in the complaint," documents "incorporated by reference in the complaint, and matters about which the court may take judicial notice."  *Golden v. Mgmt. & Training Corp.*, 319 F. Supp. 3d 358, 366 n.2 (D.D.C. 2018) (quoting *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002)) (additional citation omitted).   Following the general practice of other courts in this jurisdiction, the Court shall take judicial notice of Plaintiff's EEOC charges, and amendments and clarifications thereto.   *See id.; Leftwich v. Gallaudet Univ.*, 878 F. Supp. 2d 81, 93 n.5 (D.D.C. 2012) (citation omitted).

As detailed below, Plaintiff submitted three separate charges to the EEOC, complaining of various actions taken by WMATA that she contends were discriminatory, retaliatory, and/or created a hostile work environment.   The Court shall present the facts underlying these charges in chronological order to contextualize the timing of Plaintiff's EEOC charges and the factual allegations underlying each.

## A.  First EEOC Charge

Beginning in November 2005, Plaintiff was employed as a police officer in WMATA's Metro Transit Police Department ("MTPD").   Pl.'s Opp'n Ex. M, First EEOC Charge at 2, ECF

No. 7-15.[3]  As of June 2010, Plaintiff worked in Landover, Maryland at the Metro Supply Facility as a detective in MTPD's Criminal Investigation Division ("CID").  Pl.'s Opp'n Ex. N, Pl.'s Letter Clarifying First EEOC Charge at 2, ECF No. 7-16.

Plaintiff alleges that in the spring of 2012 she participated as a witness in an EEOC investigation initiated by a female colleague.  *See id.*; First EEOC Charge at 2.  Plaintiff claims that her supervisors knew that she participated as a witness in this EEOC investigation.  Pl.'s Letter Clarifying First EEOC Charge at 2.  Around the same time, Plaintiff notified MTPD that she was pregnant.  *Id.*  Plaintiff claims that she started to experience differential treatment as her co-workers became aware of her participation in the investigation of her colleague's EEOC complaint and her pregnancy.  *Id.*  She claims that she was "demeaned and berated" by supervisors.  *Id.*

In June 2012, Plaintiff submitted a doctor's letter to her supervisor, requesting that she be transferred to light duty or administrative duty by July 8, 2012 due to "complications" related to her pregnancy.  *Id.*  On July 10, 2012, Plaintiff was informed that her request was approved, and that she would be transferred to the Background Investigations Unit in Washington, D.C. effective July 16, 2012.  *Id.*  Plaintiff claims that after she learned about this transfer, she sought reconsideration of her new assignment—requesting that she be permitted to stay with CID in Landover, Maryland and assigned to light or administrative duty.  *Id.* at 2–3.  After a supervisor informed her that he needed additional information regarding whether an "accommodation" was required due to complications from her pregnancy, Plaintiff submitted a second request.  *Id.* at 3.  Plaintiff's requests to remain at CID were denied.  *Id.*  She claims that she had not been required to transfer positions during an earlier pregnancy in 2010, but had instead been permitted to remain in her position with CID.  *Id.* at 3–4.

---

[3] In its citations to exhibits lacking page numbers, the Court uses the pages numbers generated by the ECF heading at the top of the page.

Plaintiff began a "limited/administrative duty" assignment with the Background Investigations Unit.  *Id.* at 3.  In late July 2012, Plaintiff requested that she be allowed to complete her duties in the Background Investigations Unit at MTPD's Landover, Maryland location or from her home.  *Id.* at 2–3.  She claims that other detectives had been allowed to do so.  *Id.*  WMATA denied her request.  *Id.*  Plaintiff worked in the Background Investigations Unit until she went on maternity leave in the fall of 2012.  According to WMATA, the last day on which Plaintiff received pay before she went on maternity leave was October 6, 2012.   Def.'s Reply Ex. 1 Declaration of Annette Edmonds ("Edmonds Decl.") ¶¶ 10–12, ECF No. 8-2.

Plaintiff claims that at some point during this same time period, she was required to surrender her service weapon.  First EEOC Charge at 2.  The record regarding the date on which Plaintiff surrendered her service weapon is not clear-cut.  WMATA has submitted the declaration of Chief Ronald A. Pavlik, who indicates that the surrender of Plaintiff's service weapon occurred "because she requested, and was placed on, limited duty due to her pregnancy[.]"  Def.'s Mot. Ex. 11, Declaration of Ronald A. Pavlik ("Pavlik Decl.") ¶ 14, ECF No. 5-14.  In other words, Chief Pavlik attests that Plaintiff would have surrendered her service weapon upon being assigned to limited duty.  That assignment began on July 16, 2012.  Pl.'s Opp'n Ex. J, Pl.'s First Request for Reconsideration of Transfer Assignment at 2, ECF No. 7-12.  Plaintiff offers no evidence to controvert WMATA's evidence that her reassignment in July 2012 would have obligated her to surrender her service weapon.  Notably, her own claim of "differential treatment" relies on her allegation that other officers assigned to Background Investigations were allowed to keep their service weapons, but she was required to surrender hers.  *See, e.g.*, Pl.'s Stmt. of Disputed Material Facts ("Pl.'s Stmt.") ¶¶ 16–17, ECF No. 7-2.  Plaintiff claims that the latest date on which she could have surrendered her service weapon and requested transfer to light or administrative duty

"could have been" after October 11, 2012, but fails to provide evidence to support this claim.  *See* Pl.'s Opp'n at 9.   Accordingly, the evidence on the present record indicates that Plaintiff surrendered her service weapon sometime in July 2012.

In early February 2013, Plaintiff returned to work from maternity leave.  Pl.'s Opp'n Ex. Q, Pl.'s Letter Clarifying Second EEOC Charge at 1, ECF No. 7-19.   On February 10, 2013, Plaintiff's supervisor issued a performance evaluation, which Plaintiff claims was "subpar, unfair, and inaccurate."  Pl.'s Letter Clarifying First EEOC Charge at 4.  Plaintiff appealed this evaluation by filing a grievance and contacting MTPD's Chief, which she claims was the proper mechanism to contest the evaluation.  Pl.'s Letter Clarifying Second EEOC Charge at 1.

On March 14, 2013, a different supervisor issued a second performance evaluation, which Plaintiff also appealed by contacting the Chief on March 20, 2013.  Pl.'s Letter Clarifying Second EEOC Charge at 1.  Plaintiff claims the February 2013 and March 2013 performance evaluations applied the performance standards "unequally" to her, as compared to other CID employees who were not African American, male, and/or had not engaged in EEOC activity.  *Id.*; *see also* Pl.'s Letter Clarifying First EEOC Charge at 4.   Plaintiff further contends that these performance evaluations affected her promotion opportunities, including selection for Field Training Detective, as well as pay increases.  *Id.* at 2.

On April 29, 2013, Plaintiff filed her first Charge with the Equal Employment Opportunity Commission.  *See* First EEOC Charge.  Therein, Plaintiff alleged that WMATA subjected her to discrimination, based on her race, sex, and disability, as well a hostile work environment, beginning in May 2012 and continuing from then, in violation of Title VII and the Americans with Disabilities Act ("ADA").  *Id.* at 2.  Specifically, Plaintiff charged that she had been harassed and treated worse than male and non-pregnant employees based on the events described above: (1) her

denied requests for reconsideration of administrative and light duty assignment in July 2012; (2) being required to surrender her service weapon; (3) receiving negative performance evaluations in February 2013 and March 2013; and (4) being subjected to verbal harassment. *Id*. In addition to claiming that these actions were discriminatory and created a hostile work environment, Plaintiff claimed that these actions were in retaliation for her participation as a witness in the 2012 investigation of a female co-worker's EEEOC investigation. *See* First EEOC Charge; Pl.'s Letter Clarifying First EEOC Charge. Plaintiff also asserted that the denial of her reconsideration requests amounted to a failure to provide an accommodation in violation of the ADA. *Id.*

In a letter dated December 20, 2013, Plaintiff "clarified" her First EEOC charge and submitted additional supporting documentation. *See* Pl. Letter Clarifying First EEOC Charge. Therein, Plaintiff described examples of "verbal harassment," including an incident in which she saw a male superior call two female co-workers "bitch[.]" *Id.* at 2. Plaintiff also claimed that, after she participated as a witness in the EEOC's investigation into her female colleague's complaint and provided notice of her pregnancy, she experienced harassment and disparate treatment from several supervisors or co-workers, including phone calls and emails related to "assigned cases, case review, and payroll/administrative issues[.]" *Id.* She does not specify the timing of any of these alleged incidents. Also in her "clarifying letter" to the EEOC, Plaintiff again raised as examples of discrimination (1) the two denied requests for reconsideration of her transfer assignment, noting that during a pregnancy in 2010 she had been permitted to remain in CID; and (2) the 2013 performance evaluations, which she described as "subpar, unfair and inaccurate[.]" *Id* at 2–4.

**B. Second EEOC Charge**

On April 12, 2013, Plaintiff received a dereliction reprimand for "bypassing the chain of command" in contesting her March 2013 performance evaluation directly with the MTPD chief. Pl.'s Letter Clarifying Second EEOC Charge at 2.  Plaintiff alleges that white, male detectives frequently appealed performances evaluations by bypassing the chain of command and contacting higher ranking officials without discipline. *Id*. On May 16, 2013, after a meeting in which Plaintiff was represented by her Union, the Chief ordered that the dereliction be removed from Plaintiff's record. *Id.*

On April 24, 2013, Chief Pavlik ordered a final performance evaluation be issued to Plaintiff within ninety days. *Id.*  The new performance evaluation, however, was not issued until January 17, 2014. *Id.*  Plaintiff contends the final performance evaluation delayed her 2013 step increase in pay. *Id.*

On January 30, 2014, Plaintiff filed her second Charge with the EEOC.  Pl.'s Opp'n Ex. O, Orig. Second EEOC Charge at 2, ECF No. 7-17.

Plaintiff alleges that, in February 2014, she was suspended and then terminated on March 6, 2014, purportedly for her failure to cooperate with an internal investigation regarding inappropriate storage of case files.  Pl.'s Opp'n Ex. P, Am. Second EEOC Charge at 3, ECF No. 7-18.

Plaintiff then amended her Second EEOC Charge on March 18, 2014.  Pl.'s Opp'n Ex. P, Am. Second EEOC Charge at 2, ECF No. 7-17.  For ease of its discussion, the Court's reference to Plaintiff's "Second EEOC Charge" includes the information contained in her original and amended submissions to the EEOC.  In her Second EEOC Charge, Plaintiff raised the following events, contending that they evidenced continuing discrimination, retaliation, and a hostile work

environment: (1) the March 2013 performance evaluation; (2) the dereliction issued to her on April 12, 2013; (3) her suspension on February 20, 2014; and (4) her termination on March 6, 2014. *See* Orig. Second EEOC Charge at 2; Am. Second EEOC Charge at 2–3.

On September 18, 2014, Plaintiff submitted a letter clarifying her Second EEOC Charge. *See* Pl.'s Letter Clarifying Second EEOC Charge. Therein, Plaintiff alleges that she was held to different standards in her performance evaluations and her appeals of those evaluations than her co-workers who were white, male, and/or lacked known EEOC history. Pl.'s Letter Clarifying Second EEOC Charge at 2. Plaintiff also charged that the March 2013 performance evaluation was improper under internal procedures because the supervisor who conducted the evaluation had not supervised her for a prior period of sixty days. *Id.* Plaintiff alleged that the negative and delayed evaluations negatively affected her 2013 pay increase and promotion opportunities. *Id.*

**C. Third EEOC Charge**

One year after Plaintiff's termination—following an arbitration award that ordered her reinstatement—Plaintiff returned to work on March 6, 2015. Pl.'s Opp'n Ex. T, Pl.'s Letter Clarifying Third EEOC Charge at 2, ECF No. 7-22. Upon her return, Plaintiff contends she was told that she would be required to complete a "limited" background check, but was instead required to complete a "full" background check, as well as a physical fitness test. *Id.* She claims that these were "arbitrary and capricious" requirements not imposed on other reinstated officers. *Id.* at 3.

On March 12, 2015, Plaintiff returned to duty on a parking lot assignment. *Id.* at 2. She claims that she was not provided with proper identification, keys to the bathroom, or a radio to report suspicious activity, that her coworkers were not notified of her reassignment, and that she was forced to use her personal funds to be reinstated. *Id.* Plaintiff further contends that WMATA failed to notify the Maryland Police Training Commission of her reinstatement and, as of May 4,

2015, failed to request the derogatory remark related to her termination be removed from her police service file. *Id.* at 3. Plaintiff claims that, compared to other officers returning after reinstatement, WMATA did not provide her with similar training opportunities, did not facilitate her medical review, and subjected her to "arbitrary" reinstatement requirements that delayed her return to work. *Id.*

On May 6, 2015, Plaintiff resigned. *Id.* On May 22, 2015, Plaintiff filed her Third EEOC Charge. *See* Pl.'s Opp'n Ex. S, Third EEOC Charge, ECF No. 7-21. Plaintiff indicated that the alleged acts of discrimination were "based on" "retaliation" and a "hostile work environment." Third EEOC Charge at 2. As with her earlier charges, Plaintiff submitted a letter clarifying her Third EEOC Charge on December 15, 2015. Pl.'s Opp'n Ex. T, Letter Clarifying Third EEOC Charge, ECF No. 7-22.

**D.  EEOC's "No Further Action" Letters and Plaintiff's Requests to Reopen Investigation**

In three letters dated April 26, 2019, the EEOC notified Plaintiff that, "[i]n view of the Agreement reached between [WMATA] and [Plaintiff]," the EEOC would take "no further action" on her charges and would "discontinue its investigation." Pl.'s Opp'n Ex. D, EEOC's "No Further Action" Letters at 2–4, ECF No. 7-6. Each letter noted that the EEOC's decision to terminate the investigation did not "reflect any judgment by EEOC as to the merits of the charge." *Id.* None indicated that Plaintiff had a "right to sue" or otherwise mentioned Plaintiff's ability to pursue a civil action related to the claims underlying her three EEOC charges. *Id.*

On June 5, 2019, Plaintiff requested that the EEOC reopen the investigation of her three charges, explaining that no settlement agreement had been reached between Plaintiff and WMATA. Pl.'s Opp'n Ex. E, Pl.'s 6/5/2019 Letter to EEOC at 6, ECF No. 7-7. On March 20, 2020, Plaintiff again informed EEOC that the claims in her three charges had not been settled and

requested completion of the investigation.[4]  Pl.'s Opp'n Ex. G, Pl.'s 3/20/2020 Letter to EEOC at 2,  ECF No. 7-9.  On April 24, 2020, Plaintiff requested by email that the EEOC reopen the investigation of the three charges and send her the associated files.  Pl.'s Opp'n Ex. F, Pl.'s 4/24/2020 Email to EEOC at 2, ECF No. 7-8.

On September 15, 2020, EEOC notified Plaintiff it would not reopen the investigation. Pl.'s Opp'n Ex. H, EEOC's 9/15/2020 Letter Denying Case Reopening at 2, ECF No. 7-10.  The EEOC's letter indicated that Arbitration matter "outlined the same basis and issues identified in your EEOC charges and that [Plaintiff] [was] rewarded substantial equitable relief." *Id.*

On January 15, 2021, Plaintiff sent another letter to the EEOC, requesting that it issue a "right-to-sue" letter.  Pl.'s Opp'n Ex. I, Pl.'s 1/15/2021 Letter to EEOC at 4–6, ECF No. 7-11.  As of the date Plaintiff filed her Complaint (July 7, 2021), she had not received a right-to-sue letter.

## II.    LEGAL STANDARDS

WMATA moves to dismiss Plaintiff's Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), or, in the alternative, for summary judgment under Rule 56.  As such, the Court presents the legal standard for each rule.

### A. Federal Rule of Civil Procedure 12(b)(1)

A court must dismiss a case pursuant to Federal Rule of Civil Procedure 12(b)(1) when it lacks subject matter jurisdiction.  In determining whether there is jurisdiction, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Coal.*

---

[4] Plaintiff claims that the arbitration with WMATA included "a specific agreement not to include the EEOC claims[.]" Pl.'s Stmt. ¶ 75 (citing Pl.'s Opp'n Ex. C, Arbitration Hr'g Tr. 192:22–193:1, ECF No. 7-5).  The Arbitration Transcript indicates that the proceedings focused on Plaintiff's termination, and Plaintiff's claims of retaliation included in the EEOC Charges were raised as "potential motivations or explanations" for the termination.  Arbitration Hr'g Tr. 190:1-193:2.

*for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (internal citation omitted). In deciding whether to grant a motion to dismiss for lack of jurisdiction, the Court "may consider materials outside the pleadings." *Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

### B.  Federal Rule of Civil Procedure 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). The factual allegations in a complaint, if accepted as true, must be sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Courts "do not accept as true, however, the plaintiff's legal conclusions or inferences that are unsupported by the facts alleged." *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 314–15 (D.C. Cir. 2014).

### C.  Federal Rule of Civil Procedure 56

Under Rule 56(a), the court must grant a motion for summary judgment if the moving party shows there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986)).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Liberty Lobby*, 477 U.S. at 252.

## III.    DISCUSSION

WMATA argues in the alternative for dismissal or for summary judgment in its favor as to all of Plaintiff's claims.  Plaintiff asserts multiple theories of WMATA's liability, premising each on myriad allegations of adverse employment actions.  Before delving into the complexities of each, the Court shall broadly outline WMATA's arguments, as well as the legal framework against which the Court shall address them.

As to each of Plaintiff's claims, WMATA contends that Plaintiff has failed to exhaust her administrative remedies and/or failed to comply with the applicable statute of limitations.  *See* Def.'s Mot. at 6–7.  As to these issues, both parties have submitted evidence outside the pleadings to allow the Court to determine the timing of the events upon which Plaintiff's claims rely versus the timing of her EEOC charges.  In other words, based on the evidence submitted to the Court at this early juncture, the Court can determine whether Plaintiff has exhausted her administrative remedies and/or complied with statutory deadlines.  *See* Fed. R. Civ. P. 12(d) ("If, on a motion 12(b) . . . , matters outside the pleadings are presented to and not excluded by the court, the court must treat the motion as one for summary judgment under Rule 56.").  Accordingly, the Court shall partially convert Defendant's motion to a motion for summary judgment to the extent WMATA argues that Plaintiff has failed exhaust her administrative remedies and/or that her claims are time-barred.  *See Kruger v. Cogent Commc'ns, Inc.*, 174 F. Supp. 3d 75, 81 (D.D.C. 2016) (considering matters outside the pleadings on the issue of administrative exhaustion and partially converting the motion to dismiss to a motion for summary judgment on that issue).  In its analysis

of Plaintiff's discrimination and retaliation claims, the Court addresses these issues first, which, as detailed below, eliminates or narrows certain claims.

WMATA also argues that the factual allegations of Plaintiff's Complaint are insufficient to state any plausible claim for relief under Federal Rule of Civil Procedure 12(b)(6). *See* Def.'s Mot. at 13–28. WMATA further contends that the evidence it has submitted to the Court establishes legitimate, non-discriminatory or non-retaliatory explanations for its actions. *See id*. As to these portions of WMATA's motion, the Court, in its discretion, declines to convert WMATA's motion to dismiss to a motion for summary judgment. Plaintiffs with employment discrimination claims "ordinarily must marshal the kinds of evidence that one usually can only gather during the discovery phase in order to carry their burden of establishing that the legitimate reasons the defendant has proffered are, in fact, pretextual, and that the real reason for the adverse employment action is a prohibited one." *Ross v. U.S. Capitol Police*, 195 F. Supp. 3d 180, 193 (D.D.C. 2016). As such, the Court shall follow the "ordinary practice" of "deny[ing] a defendant's request that the Court consider evidence regarding the employer's reasons for undertaking the challenged employment action when the defendant submits such evidence along with a pre-discovery motion in cases involving claims of employment discrimination." *Id.*; *see also, e.g.*, *Ryan-White v. Blank*, 922 F. Supp. 2d 19, 25 (D.D.C. 2013) (declining to convert the defendant's motion to dismiss into a pre-discovery motion for summary judgement).

Having laid out the framework for its analysis, the Court next reviews Plaintiff's claims, grouped together as follows: (1) sex and race discrimination under Title VII (Counts 3, 4, and 5); (2) disability discrimination under the Rehabilitation Act (Count 2); and (3) hostile work environment under Title VII and the Rehabilitation Act (Count 1).

**A. Sex and Race Discrimination and Retaliation Claims Under Title VII (Counts 3, 4, and 5)**

The Court first considers Plaintiff's claims under Title VII—for discrimination based on race and sex, and retaliation for her participation in EEOC activity. *See* Compl. ¶¶ 45–67. As explained above, the Court shall first consider matters outside the pleadings to assess whether WMATA is entitled to summary judgment based on its arguments that Plaintiff has failed to exhaust her administrative remedies as to these Title VII claims and that these claims are time-barred. As indicated below, partial summary judgment in WMATA's favor is appropriate as to certain bases for Plaintiff's Title VII claims due to Plaintiff's failure to exhaust her administrative remedies by failing to timely assert certain claims. As to the remaining claims, the Court then assesses whether the factual allegations in the Complaint state a plausible claim for relief.

**1. Administrative Exhaustion**

Prior to filing a civil action under Title VII, a party must exhaust her administrative remedies by (1) filing a charge with the EEOC within 180 days after each alleged "unlawful employment practice" and (2) receiving a "right-to-sue letter" from the EEOC. 42 U.S.C. § 2000e-5(e)(1), (f)(1); *Oviedo v. WMATA*, 948 F.3d 386, 393 (D.C. Cir. 2020). WMATA argues that Plaintiff failed to exhaust her administrative remedies because (1) her EEOC charges were untimely with respect to some of the alleged discriminatory events and (2) she never obtained a right-to-sue letter from the EEOC. *See* Def.'s Mot. at 6–7, 9–13.

Although WMATA provides the legal standard applicable to a motion to dismiss for lack of subject matter jurisdiction, it does not offer any explicit argument that the Court lacks jurisdiction. To the extent WMATA intended to argue that Plaintiff's failure to exhaust her administrative remedies as to her Title VII claims forecloses the Court's subject matter jurisdiction, that argument is incorrect. *See Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843, 1851

(2019) ("Title VII's charge-filing requirement is a processing rule, albeit a mandatory one, not a jurisdictional prescription delineating the adjudicatory authority of courts."); *Menominee Indian Tribe of Wisconsin v. United States*, 614 F.3d 519, 527 (D.C. Cir. 2010) (explaining that Title VII does not "incorporate[ ] a jurisdictional exhaustion requirement"). Rather, failure to exhaust administrative remedies is an affirmative defense," *Terveer v. Billington*, 34 F. Supp. 3d 100, 109 (D.D.C. 2014), which WMATA raises here, Def.'s Mot. at 6–7, and bears the burden of proving, *see Est. of Rudder v. Vilsack*, 10 F. Supp. 3d 190, 195 (D.D.C. 2014).

As previously noted, to assess whether Plaintiff has satisfied her obligation to exhaust her administrative remedies as to her Title VII discrimination and retaliation claims, the Court shall partially convert Defendant's motion to dismiss to a  motion for summary judgment. *See, e.g.*, *Kruger*, 174 F. Supp. 3d at 81. Accordingly, the Court shall consider material outside the pleadings in assessing whether Plaintiff has exhausted her administrative remedies as to these claims.

Before doing so, the Court addresses Plaintiff's contention that WMATA waived this defense by not raising it in EEOC proceedings. *See* Pl.'s Opp'n at 9. Plaintiff is correct that if an agency "not only accept[s] and investigate[s] a complaint, but also decide[s] it on the merits—all without mentioning timeliness—[the] failure to raise the issue in the administrative process may lead to waiver of the defense when the complainant files suit." *Bowden v. United States*, 106 F.3d 433, 438 (D.C. Cir. 1997).[5] However, beyond mere "belief," Plaintiff offers no factual support to avoid WMATA's affirmative defense and therefore has not satisfied her burden of "pleading and proving facts supporting equitable avoidance of the defense." *Id.* at 437. Accordingly, the Court proceeds to analyze whether or not Plaintiff has exhausted her administrative remedies to proceed with her Title VII discrimination and retaliation claims.

---

[5] As noted *supra* Section I(D), the EEOC indicated that it would take "no further action" on Plaintiff's charges, explicitly noting that this decision was *not* based "on the merits."

### a.   Timeliness of EEOC Charges

Under Title VII, claims alleging "unlawful employment practice[s]" can raise "discrete acts[,] such as termination, failure to promote, denial of transfer, or refusal to hire[,]" or a hostile work environment involving "repeated conduct."[6]  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114–15 (2002).  For claims based on discrete acts, "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice[,]" and "a party, therefore, must file a charge within […] 180 […] days of the date of the act or lose the ability to recover for it."[7]  *Id.* at 110.

### i.   First EEOC Charge

First, WMATA argues that certain events raised in Plaintiff's First EEOC charge occurred more than 180 days before she filed the charge on April 29, 2013—and so they are untimely.[8] Specifically, WMATA contends that the following events were untimely: (1) the denied requests for reconsideration of Plaintiff's administrative and light duty assignment in July 2012; (2) the required surrender of her service weapon in 2012; and (3) alleged "verbal harassment."  Def.'s Mot. at 10–11; *see* First EEOC Charge.  However, WMATA concedes that Plaintiff's February 2013 and March 2013 performance evaluations *were* timely included in her First EEOC Charge,

---

[6] Plaintiff also raises a hostile work environment claim, which the Court addresses *infra* Section III(C).

[7] Ordinarily, if a claimant has "initially instituted proceedings with a State or local agency with authority to grant or seek relief from" a discriminatory act, the 180-day timeframe is extended to 300 days.  *Whorton v. WMATA*, 924 F. Supp. 2d 334, 345 n.8 (D.D.C. 2013) (internal citations omitted).  "But, because WMATA is part of an interstate compact agency, the compact jurisdictions have conferred their sovereign immunity upon it."  *Id.* (citing *Jones v. WMATA*, 205 F.3d 428, 432 (D.C. Cir. 2000)).  Therefore, "WMATA is not subject to the state or local antidiscrimination laws," and so the local authority was "without authority to grant or seek relief for the plaintiff. Consequently, the 300[-]day provision is inapplicable and the 180[-]day provision controls."  *Id.*

[8] Both parties appear to have miscalculated the "cut-off" date of the 180-day period preceding April 29, 2013 as October 11, 2012.  Def.'s Mot. at 10; Pl.'s Opp'n at 10–11.  However, 180 days prior to April 29, 2013 was October 31, 2012.

and so Plaintiff can raise them as factual bases her Title VII claims for sex discrimination (Count Three), race discrimination (Count Four), and retaliation (Count Five).

Based on the record before the Court, the denied requests for reconsideration of Plaintiff's administrative and light duty assignment and the surrender of Plaintiff's service weapon occurred before October 31, 2012, and therefore are untimely.  Plaintiff requested transfer to light or administrative duty sometime in June 2012.  Pl.'s Letter Clarifying First EEOC Charge at 2. Plaintiff received notice of her transfer assignment on July 10, 2012 and began the assignment on July 16, 2012.  *See* Pl.'s First Request for Reconsideration of Transfer Assignment.  Plaintiff made her first reconsideration request on July 11, 2012, *see id.*, which was denied prior to July 16, 2012, *see* Pl.'s Letter Clarifying First EEOC Charge at 3.  Plaintiff submitted a second reconsideration request on July 24, 2012, which was denied at the end of July.  *See id.*  All of these dates are, of course, well before the 180-day period preceding Plaintiff's First EEOC Charge and therefore are not timely.

The record regarding the date on which Plaintiff surrendered her service weapon is less clear-cut.  However, Plaintiff does not offer evidence—beyond her mere speculation—to controvert WMATA's evidence that this event also occurred before October 31, 2012.  According to the Declaration of Chief Pavlik, Plaintiff was required to surrender her service weapon because "she requested, and was placed on, limited duty due to her pregnancy[.]"  Pavlik Decl. ¶ 14. Plaintiff began her limited duty assignment on July 16, 2012—again, well before the start of the 180-day period on October 31, 2012.  Plaintiff offers no evidence to controvert WMATA's evidence that her assignment to "limited duty" in July 2012 obligated her to surrender her service weapon.  Notably, her own claim of "differential treatment" relies on her allegation that other officers assigned to Background Investigations (the unit to which she was assigned for "limited

duty") were allowed to keep their service weapons, but she was required to surrender hers. *See* Pl's Stmt. ¶¶ 16, 17.  Although Plaintiff claims that she "*could have*" been required to surrender her service weapon after October 11, 2012, Pl.'s Opp'n at 9 (emphasis added), she offers no evidence in support of this claim.  Therefore, there is no genuine dispute of material fact that this event occurred before the start of the 180-day period preceding Plaintiff's First EEOC Charge.

Plaintiff does not address WMATA's argument that her First EEOC Charge was untimely as it relates to her allegations of verbal harassment.  Plaintiff's affidavit details interactions with multiple supervisors in May 2012, and a June 2012 interaction with one colleague, Lieutenant Boehm.  Pl.'s Opp'n Ex. A, Decl. of Amanda Betts ("Pl.'s Decl.") ¶¶ 5–7, 60–62, ECF No. 7-3. To the extent Plaintiff relies on these interactions as the basis for her discrimination and retaliation claims—and any continuing examples of "verbal harassment" that occurred prior to October 31, 2012—such claims were untimely included in Plaintiff's First EEOC Charge.

In sum, the following actions occurred outside of the 180-day period: Plaintiff's June 2012 interaction with Lieutenant Boehm, her July 2012 transfer assignment, any of the other continuing verbal interactions that occurred prior to October 31, 2012, the July 2012 denial of her two reconsideration requests, and the July 2012 surrender of her service weapon.  As a result, the Court **GRANTS IN PART** summary judgment to WMATA as to these alleged discriminatory acts to the extent Plaintiff relies on them in support of her  Title VII claims for sex discrimination (Count Three), race discrimination (Count Four), and retaliation (Count Five) due to Plaintiff's failure to exhaust her administrative remedies by timely including in an EEOC charge.

ii.   <u>Second EEOC Charge</u>

WMATA claims that Plaintiff's Second EEOC Charge, filed on January 30, 2014 and amended on March 18, 2014,[9] was untimely with respect to all the employment practices Plaintiff raised, which include: (1) a March 2013 performance evaluation; (2) an April 12, 2013 dereliction reprimand issued for bypassing the chain of command; (3) a January 17, 2014 performance evaluation; (4) her February 20, 2014 suspension; and (5) the March 6, 2014 termination.  Def.'s Mot. at 11; Second EEOC Charge at 2; Am. Second EEOC Charge at 2–3; Pl.'s Letter Clarifying Second EEOC Charge at 2.  WMATA erroneously states that 180 days prior to the filing of Plaintiff's Second EEOC Charge was November 1, 2013.  *Id.*  However, August 3, 2013 was 180 days prior to the filing of Plaintiff's Second EEOC Charge on January 30, 2014.

Plaintiff's Second EEOC Charge was untimely with respect to the March 2013 performance evaluation and the April 12, 2013 dereliction reprimand, which each occurred prior to August 3, 2013.  However, Plaintiff timely raised the March 2013 performance evaluation in her First EEOC Charge.[10]   *See supra* Section III(A)(1)(a)(i).  But the alleged April 12, 2013 dereliction reprimand is untimely as to Plaintiff's discrimination and retaliation claims.

---

[9] EEOC regulations provide that a "charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein. Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received." 29 C.F.R. § 1601.12.  Here, Plaintiff appears to have amended her Second EEOC Charge to include additional incidents post-dating the original filing date of that charge.  WMATA disputes the timeliness of the Second EEOC Charge with respect to all the events raised, but does not dispute the propriety of the amendments.

[10] WMATA argues, without legal authority, that the acts raised in Plaintiff's Second EEOC Charge must be dismissed because they "duplicate claims" from her First EEOC Charge.  Def.'s Mot. at 12–13.  However, the only "duplicate" act raised in both the First and Second EEOC Charges is the March 2013 performance evaluations. Pl.'s Ex. M, First EEOC Charge, ECF No. 7-15; Pl.'s Ex. P, Amended Second EEOC Charge at 2–3, ECF No. 7-18.  However, this "duplicate claim" is only relevant to the statute of limitations; when a claim is time-barred because a plaintiff fails to file a civil suit within ninety days of receiving notice of the EEOC's final action, a plaintiff cannot avoid the statute of limitations by filing a new EEOC charge raising the same allegations and then filing a civil suit within ninety days of receiving notice of the EEOC's final action in the subsequent charge. *Price v. Greenspan*, 374 F. Supp. 2d 177, 184 (D.D.C. 2005), *aff'd sub nom. Price v. Bernanke*, 470 F.3d 384 (D.C. Cir. 2006).   Because the March 2013 performance evaluation was timely included in the First EEOC charge, this "duplication" is irrelevant.

Accordingly, the Court **GRANTS IN PART** summary judgment to WMATA as to the April 12, 2013 dereliction reprimand insofar as Plaintiff relies on this action in support of her Title VII claims for sex discrimination (Count Three), race discrimination (Count Four), and retaliation (Count Five) due to Plaintiff's failure to exhaust her administrative remedies by timely raising them in any EEOC charge.

iii.   Third EEOC Charge

WMATA argues that Plaintiff's Third EEOC Charge, filed on May 22, 2015, was untimely with respect to her termination on March 6, 2014.   Pl.'s Ex. S, Third EEOC Charge at 2, ECF No. 7-21; Def.'s Ex. 15, March 6, 2014 Letter of Termination, ECF No. 5-18.   However, as Plaintiff points out, her Third EEOC Charge did not raise her termination—rather, that action was timely included in Plaintiff's Second EEOC Charge.   Pl.'s Ex. S, Third EEOC Charge at 2, ECF No. 7-21 ; Pl.'s Opp'n at 11.

WMATA does not raise the defense of administrative exhaustion as to the remainder of alleged discriminatory acts underlying Plaintiff's Third EEOC Charge, including: (1) intentional delay of her reinstatement until March 12, 2015; (2) failure to provide proper employee identification, keys to access the bathroom, and a radio to report suspicious activity upon her return on March 12, 2015; (3) failure to notify official of District One of her duty assignment starting March 12, 2015; (4) required use of personal funds to complete the recertification process beginning March 6, 2015; (5) required completion of the police recertification process, including a full background investigation, beginning March 6, 2015; and (6) her resignation on May 6, 2015. *See* Third EEOC Charge.

### b.  Failure to Obtain a Right-to-Sue Letter

WMATA next argues that Plaintiff failed to administratively exhaust her Title VII claims because she never received a right-to-sue letter from the EEOC.  Def.'s Mot. at 7.  Plaintiff concedes that, as of October 6, 2021, she had not yet received a right-to-sue letter from the EEOC.  Pl.'s Opp'n at 5.

The EEOC must notify an aggrieved party if it (1) dismisses a charge, (2) has not filed a civil action within 180 days of the charge's filing, or (3) has not entered a conciliation agreement with the aggrieved party.  42 U.S.C. § 2000e-5(f)(1).  The EEOC's regulations require that when it dismisses a charge, it must issue a right-to-sue letter to the aggrieved party, which includes "[a]uthorization to the aggrieved person to bring a civil action under title VII[.]"  29 C.F.R. § 1601.28(b)(3)(i), (e)(1).  Receipt of a right-to-sue letter is a "condition precedent to the initiation of a Title VII action in court."  *Peters v. Dist. of Columbia*, 873 F. Supp. 2d 158, 180 (D.D.C. 2012).  It is not, however, a jurisdictional requirement.  *See Fort Bend Cty.*, 139 S. Ct. at 1850.

Despite having not received a right-to-sue letter, Plaintiff contends that she is entitled to equitable modification of this requirement because (1) the EEOC was "obligated" to provide her with a right-to-sue letter, (2) a right-to-sue letter is not a jurisdictional requirement, and (3) she made substantial efforts to obtain a right-to-sue letter from the EEOC.  *See* Pl.'s Opp'n at 7–8.  Given the peculiar circumstances of this case, the Court agrees with Plaintiff that waiver of this requirement is appropriate.

A district court may exercise its discretion to waive Title VII's right-to-sue letter requirement when equity so requires.  *See, e.g.*, *Tucker v. Howard Univ. Hosp.*, 764 F. Supp. 2d 1, 5, n.7 (D.D.C. 2011) (declining to dismiss a plaintiff's Title VII claim due to the lack of a right-to-sue letter); *see Holmes v. PHI Serv. Co.*, 437 F. Supp. 2d 110, 123 (D.D.C. 2006) ("[A]

plaintiff's failure to fulfill a non-jurisdictional exhaustion requirement need not be fatal to her claim"). To determine whether waiver is appropriate, the Court must consider (1) the equitable interests of the plaintiff, including unfair prejudice brought by dismissal and the "excusing circumstances[,]" (2) "the purpose of the doctrine of exhaustion of remedies[,]" *Brown v. Marsh*, 777 F.2d 8, 14 (D.C. Cir. 1985), and (3) "whether the plaintiff has been pursuing [her] rights diligently[.]" *Niskey v. Kelly*, 859 F.3d 1, 7 (D.C. Cir. 2017).

Here, these factors favor waiving the non-jurisdictional "right-to-sue" letter requirement. The EEOC notified Plaintiff on August 26, 2019, that it would take "no further action" and would "discontinue its investigation" of her three charges. EEOC's "No Further Action" Letters at 2–4. These letters did not contain any authorization for Plaintiff to bring a civil action under Title VII. *See* 29 C.F.R. §§ 1601.28(b)(3)(i), (e)(1). On multiple occasions, Plaintiff requested that the EEOC resume its investigation. *See* Pl.'s 4/24/2020 Email to EEOC at 2; Pl.'s 3/20/2020 Letter to EEOC at 2. The EEOC notified Plaintiff by letter that it would not reopen its investigation. EEOC's 9/15/2020 Letter Denying Case Reopening at 2. Again, this letter contained no reference to Plaintiff's "right to sue" under Title VII. *Id.* Plaintiff then contacted the EEOC again in January 2021, requesting that it issue a right-to-sue letter. Pl.'s 1/15/2021 Letter to EEOC at 4–6.

The EEOC's notice to Plaintiff that it would not take any further action on her claims did not contain formal notice of her right to sue, and so failed to convey to Plaintiff that she could initiate a civil action. Moreover, Plaintiff pursued completion of the administrative investigation and requested a right-to-sue letter in writing, and so she diligently pursued her rights. Dismissal of Plaintiff's Title VII claims for lack of a right-to-sue letter would punish Plaintiff for the EEOC's failure to give her notice of her right to sue, as directed by its own regulations. Accordingly, based on the unique circumstances of this case, the Court exercises its equitable authority to waive the

requirement that Plaintiff receive a "right-to-sue" letter from the EEOC as a prerequisite to her pending lawsuit.

As a final point, WMATA also appears to suggest that Plaintiff's Title VII claims cannot proceed because she filed her Complaint more than 90 days after receipt of the EEOC's "no further action" letter.  *See* Def.'s Mot. at 6–7, 10.   However, WMATA also concedes that this correspondence was also *not* a right-to-sue letter.  *Id.* at 7.  Plaintiff argues that because she never received a right-to-sue letter, the 90-day period never began to run.  *See* Pl.'s Opp'n at 8–9.  She further argues that even if the 90-day period to file suit did start running, she is entitled to equitable tolling based on the unusual circumstances surrounding her failed attempts to obtain a right-to-sue letter.  Pl.'s Opp'n at 8; *see supra* Section I(D).

Although the practical effect of the EEOC's "No Further Action Letter" may have been to dismiss Plaintiff's EEOC charges, the Court agrees with Plaintiff that the letter did not provide sufficient notice to trigger the 90-day period within which she was required to file this lawsuit.  As previously noted, the letter did not inform Plaintiff of her right to sue or the time period within which she could do so.  As such, the 90-day time period did not begin to run because Plaintiff was never notified that she had a right to bring a civil action, or the time within which to do so.  *See Coles v. Penny*, 531 F.2d 609, 617 (D.C. Cir. 1976).

Even if the EEOC's notice that it would take "no further action" on Plaintiff's charges *did* commence the 90-day time period, equitable tolling of that period is appropriate.  When an agency has "taken final action, but has failed to issue a proper notice," an aggrieved employee may "bring an action within a reasonable time."  *Williams v. Hidalgo*, 663 F.2d 183, 188 (D.C. Cir. 1980).  As previously discussed, Plaintiff repeatedly petitioned the EEOC to resume its investigation, and, most recently, requested in January 2021 that the EEOC issue a right-to-sue letter.  Based on these

efforts, coupled with the EEOC's failure to inform Plaintiff of her right to sue within 90 days, considerations of equity compel the Court to toll the 90-day period under Title VII.

### 2.  Failure to State a Claim Upon Which Relief May be Granted

As to the remaining claims (that *were* timely included in an EEOC charge), the Court next considers whether Plaintiff has alleged sufficient facts to state plausible discrimination and retaliation claims under Title VII.

### a.  Sex and Race Discrimination under Title VII (Counts Three and Four)

Plaintiff brings claims of sex and race discrimination in violation of Title VII based on her protected status as a female and as an African American (Counts Three and Four).  She alleges that, compared to similarly situated, non-female, and non-African American co-workers, she experienced disparate treatment in the form of unnecessary supervisory scrutiny, undermining of her supervisory scrutiny, verbal harassment, unfair performance evaluations, and termination. Compl. ¶¶ 47, 54.

To state a claim of discrimination under Title VII, a plaintiff must show that (1) she is a member of a protected class, (2) that she suffered an "adverse employment action," and (3) that the action gives rise to an inference of discrimination.  *Chambers v. Dist. of Columbia*, 35 F.4th 870, 878 (D.C. Cir. 2022); *Walker v. Johnson*, 798 F.3d 1085, 1091 (D.C. Cir. 2015); "At the motion to dismiss stage . . . an employment discrimination plaintiff need not anticipate legitimate, non-discriminatory reasons that may be proffered by the employer for the adverse employment action nor allege pretext to survive a motion to dismiss." *Townsend v. United States*, 236 F. Supp. 3d 280, 298 (D.D.C. 2017).  Moreover, a plaintiff can show that an adverse employment action gives rise to an inference of discrimination by alleging (1) she was similarly situated to an employee who was not a member of a protected class (a comparator), and (2) she was treated

differently than the similarly situated employee.  *Allen v. Johnson*, 795 F.3d 34, 40 (D.C. Cir. 2015); *Holbrook v. Reno*, 196 F.3d 255, 261 (D.C. Cir. 1999).

WMATA argues that Plaintiff has failed to state a *prima facie* case of discrimination because she has not "alleged any comparator."  Def.'s Mot. at 13.  Although WMATA is correct that Plaintiff does not plead facts detailing the name of a specific comparator, she is not required to engage in "heightened fact pleading of specifics" to survive a motion to dismiss.  *Twombly*, 550 U.S. at 570; *see also Savignac v. Jones Day*, 486 F. Supp. 3d 14, 31 (D.D.C. 2020) (finding sufficient complaint that "identif[ied] a discrete and focused group of comparators" which provided defendant with "clear notice of the substance" of the plaintiff's discrimination claim).  *Mulkerin*, the case on which WMATA relies, is distinguishable because the plaintiff failed to raise any adverse employment action or the existence of any comparator at all.  *Mulkerin v. Bunch*, No. 1:19-CV-03850 (CJN), 2021 WL 3771806, at *3 (D.D.C. Aug. 25, 2021).  That is not so here.

WMATA also argues that it has offered evidence of non-discriminatory reasons for some of its alleged discriminatory actions.  *See* Def.'s Mot. at 14–15.  At this preliminary stage of litigation, Plaintiff is not required to rebut the non-discriminatory reasons WMATA offers for the employment actions.  *See Townsend*, 236 F. Supp. 3d at 298; *Walker*, 798 F.3d at 1092.  As the Court has declined to convert WMATA's motion to dismiss to a motion for summary judgement as to the merits of Plaintiff's discrimination claims, it would be premature to require Plaintiff to rebut WMATA's non-discriminatory justifications at this time.

As to one specific action—the March 2013 performance evaluation—WMATA argues that it did not amount to an "adverse employment action" because it did not cause Plaintiff financial harm.  *See* Def.'s Reply at 5–8.  However, WMATA's argument relies on materials outside the

pleadings.  Plaintiff alleges that the March 2013 performance evaluation caused a loss of income.

Compl. ¶ 42.  At this stage, her factual allegation is sufficient.

The Court therefore **DENIES** WMATA's Motion to Dismiss on the grounds that Plaintiff

fails to state plausible claims of sex and race discrimination under Title VII (Counts Three and

Four)—insofar as these claims rely on actions that were timely included in an EEOC charge.  *See*

*supra* Section III(A)(1)(a).

### b.  Retaliation under Title VII (Count Five)

Plaintiff also alleges that she engaged in "protected" activities, including (1) participating

as a witness in the investigation of a female colleague's EEOC charges; (2) filing her own EEOC

charges; and (3) filing a grievance under the Collective Bargaining Agreement.  Compl. ¶¶ 60–61.

She claims that she experienced retaliatory treatment after WMATA became aware of her

participation as a witness in the investigation of a female colleague's EEOC charge in the spring

of 2012, including "unnecessary supervisory scrutiny, undermining of her supervisory roles, verbal

harassment," as well as, unfair "performance evaluations, and termination."[11]  Compl. ¶¶ 60, 61,

63.  Plaintiff also claims that the adverse actions identified in her Second and Third EEOC Charges*,*

*see supra* Sections (I)(B), (C), were in retaliation for her having filed her first charge.  Am. Second

EEOC Charge at 2; Third EEOC Charge at 2.

"To establish a prima facie case of retaliation, a claimant must show that (1) she engaged

in a statutorily protected activity; (2) she suffered a materially adverse action by her employer; and

(3) a causal connection existed between the two."  *Wiley v. Glassman*, 511 F.3d 151, 155 (D.C.

---

[11] Plaintiff also alleges as examples of retaliatory acts the "declination of requests for transfers to administrative and limited duty assignments, surrendering her service weapon[.]"  However, as explained *supra* Section III(A)(1)(a) these actions occurred outside the 180-day timeframe preceding her First EEOC charge and so cannot form the basis for her retaliation claims.  For the same reason, she cannot rely on examples of "verbal harassment" which occurred prior to October 31, 2012 as retaliatory acts.

Cir. 2007); *Solomon v. Vilsack*, 763 F.3d 1, 14 (D.C. Cir. 2014).  For the purposes of a retaliation claim, an adverse employment action is "one that could well dissuade a reasonable worker from making or supporting a charge of discrimination."  *Taylor v. Solis*, 571 F.3d 1313, 1320 (D.C. Cir. 2009) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)).  "A causal connection . . . may be established by showing that the employer had knowledge of the employee's protected activity, and that the adverse . . . action took place shortly after that activity."  *Rochon v. Gonzales*, 438 F.3d 1211, 1220 (D.C. Cir. 2006) (quoting *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985)).  To survive a motion to dismiss, a plaintiff is not required to "allege facts sufficient to negate [Defendant's] alternative explanations for its actions—whatever they may turn out to be."  *Paschal v. Dist. of Columbia*, 65 F. Supp. 3d 172, 181 (D.D.C. 2014).

WMATA disputes that Plaintiff ever participated as a witness in a previous EEOC investigation, and therefore has not identified a protected activity in which she engaged prior to filing her First EEOC Charge.  WMATA also asserts non-retaliatory explanations for its actions. *See* Def.'s Mot. at 12, 19–21.  These responses require the Court to consider materials outside of the Complaint and EEOC charges, and therefore the Court shall await the conclusion of discovery to assess their merits.  Moreover, Plaintiff is not required to rebut WMATA's non-retaliatory reasons at the motion to dismiss stage. *Paschal*, 65 F. Supp. 3d at 181; *Townsend*, 236 F. Supp. 3d at 298; *Walker*, 798 F.3d at 1092.

WMATA also contends that, as to the alleged retaliatory actions in 2015, Plaintiff has failed to establish proximity to the protected activity.  Def.'s Mot. at 18–19.  However, Plaintiff's Third EEOC Charge makes clear that she was in arbitration with WMATA until January 28, 2015, which was less than two months before her reinstatement on March 12, 2015. Third EEOC Charge

at 2.  The EEOC's investigation of Plaintiff's three EEOC Charges was also still pending in 2015. Compl. ¶ 17.

The Court therefore **DENIES** WMATA's Motion to Dismiss on the grounds that Plaintiff fails to state plausible claims of retaliation under Title VII (Count Five) insofar as these claims rely on actions that were timely included in an EEOC charge.  *See supra* Section III(A)(1)(a).

### B.  Disability Discrimination Claim Under the Rehabilitation Act (Count 2)

The Court next turns to Plaintiff's claim of disability discrimination arising under the Rehabilitation Act.  Following the same approach used with respect to Plaintiff's Title VII discrimination and retaliation claims, the Court shall first consider matters outside the pleadings to assess whether WMATA is entitled to summary judgment based on its arguments that Plaintiff's Rehabilitation Act claims are untimely. As indicated below, partial summary judgment in WMATA's favor is appropriate as to certain factual bases for Plaintiff's Rehabilitation Act claim. As to the remaining grounds for this claim, the Court then assesses whether the factual allegations in the Complaint state a plausible claim for relief.

#### 1.  Administrative Exhaustion

WMATA appears to seek dismissal of Plaintiff's Rehabilitation Claim for lack of subject matter jurisdiction, though its basis for doing so is unclear.  To the extent WMATA argues that Plaintiff's purported failure to exhaust her administrative remedies as to her Rehabilitation Act claims deprives the Court of subject matter jurisdiction, that argument is incorrect. Because WMATA is an interstate compact agency, Plaintiff was a "non-federal employee" whose claims fall under section 504 of the Rehabilitation Act.[12]  "Although the question has not been decisively

---

[12] Section 504 provides, in pertinent part: "No otherwise qualified individual with a disability in the United States […] shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794;

Case 1:21-cv-01861-CKK   Document 10   Filed 08/10/22   Page 30 of 36

resolved in this Circuit, it is generally understood that Section 504 claims brought by non-federal employees" are "exempt from the administrative exhaustion requirements that govern claims brought by federal employees under the Rehabilitation Act."[13]  *Pappas v. Dist. of Columbia*, 513 F. Supp. 3d 64, 83 (D.D.C. 2021); *see also, e.g.*, *Muhammad v. United States*, 300 F. Supp. 3d 257, 263 (D.D.C. 2018); *Congress v. Dist. of Columbia*, 277 F. Supp. 3d 82, 87 (D.D.C. 2017); *Minter v. Dist. of Columbia*, 62 F. Supp. 3d 149, 164–65 (D.D.C. 2014); *Adams v. Dist. of Columbia*, 740 F. Supp. 2d 173, 182 (D.D.C. 2010).  As such, Plaintiff was not required to exhaust claims brought under the Rehabilitation Act.

## 2.  Statute of Limitations

WMATA next argues that  Plaintiff's Rehabilitation Act claims are time-barred.  Def.'s Mot. at 1, 6–9.  Because the Rehabilitation Act does not provide its own limitations period, the Court follows the "settled practice" of "adopt[ing] a local time limitation . . . [that is] not inconsistent with federal law or policy[.]"  *Jaiyeola v. Dist. of Columbia*, 40 A.3d 356, 364 (D.C. 2012) (quoting *Wilson v. Garcia*, 471 U.S. 261, 266 (1985)).  Consistent with other courts in this jurisdiction, the Court shall apply the one-year statute of limitations of the D.C. Human Rights Act ("DCHRA"), D.C. Code § 2-1403.16(a).  *See Pappas*, 513 F. Supp. 3d at 82; *Congress*, 324 F. Supp. 3d at 173; *Ware v. Hyatt Corp.*, No. CV 12-0395 (ABJ), 2013 WL 12321372, at *15 (D.D.C.

---

*see Barbour v. WMATA*, 374 F.3d 1161, 1170 (D.C. Cir. 2004) (applying Section 504 of the Rehabilitation Act to claim by WMATA employee because WMATA accepts federal funds).

[13] Although the D.C. Circuit has addressed the requirement of administrative exhaustion under the Rehabilitation Act, it has done so in decisions involving federal employees whose claims are governed by section 501 (not section 504).  *See, e.g.*, *Spinelli v. Goss*, 446 F.3d 159, 162 (D.C. Cir. 2006); *Barkley v. U.S. Marshals Serv. ex rel. Hylton*, 766 F.3d 25, 33 (D.C. Cir. 2014).  Other jurisdictions have also widely held that Section 504 claims by non-federal employees do not require administrative exhaustion.  *See, e.g.*, *Lucas v. Henrico Cty. Sch. Bd.*, 822 F. Supp. 2d 589, 603 (E.D. Va. 2011) ("Courts have uniformly held that non-federal employees need not exhaust administrative remedies before bringing a private action under Section 504 of the Rehabilitation Act."); *see also Freed v. Consol. Rail Corp.*, 201 F.3d 188, 192 (3d Cir. 2000);*Brennan v. King*, 139 F.3d 258, 267 (1st Cir. 1998); *Tuck v. HCA Health Servs. of Tennessee, Inc.*, 7 F.3d 465, 470 (6th Cir. 1993); *Smith v. Barton*, 914 F.2d 1330, 1338 (9th Cir. 1990); *Miener v. State of Mo.*, 673 F.2d 969, 978 (8th Cir. 1982); *Pushkin v. Regents of Univ. of Colorado*, 658 F.2d 1372, 1382 (10th Cir. 1981); *Lloyd v. Reg'l Transp. Auth.*, 548 F.2d 1277, 1287 (7th Cir. 1977).

Mar. 27, 2013).  Both parties agree that the DCHRA's one-year limitations period applies.  *See* Def.'s Mot. at 8–9; Pl.'s Opp'n at 8.

The D.C. Circuit has also directed that "when a court borrows a statute of limitations period from state law—such as the D.C. Human Rights Act at issue here—it must also borrow the statute's tolling provisions."  *Pappas*, 513 F. Supp. 3d at 82 (citing *Alexander v. WMATA*, 826 F.3d 544, 551 (D.C. Cir. 2016)).  Under the DCHRA's tolling provision, the timely filing of a complaint with the EEOC "toll[s] the running of the statute of limitations while the complaint is pending." D.C. Code § 2–1403.16(a); *Alexander*, 826 F.3d at 551.  "The running of the statute of limitations resumes, . . . when the EEOC . . . issues a right-to-sue letter."  *Jaiyeola*, 40 A.3d at 369.

WMATA argues that Plaintiff's Rehabilitation Act claims are time-barred.  Def.'s Mot. at 7–9.  However, the claims of disability discrimination timely included in Plaintiff's EEOC charges—the same as those addressed as to her sex and race discrimination claims, *supra* Section III(A)(1)(a)—were tolled upon her filing charges with the EEOC.  And, as previously noted, a right-to-sue letter was never issued to Plaintiff.  Therefore, the statute of limitations for Plaintiff's discrimination claims under the Rehabilitation Act never resumed running.

However, as to acts or events underlying Plaintiff's claims of disability discrimination which were *not* timely included in an EEOC charge, those claims *are* time-barred by the one-year statute of limitations.  These include: the June 2012 alleged verbal interaction with Lieutenant Boehm, the alleged continuing verbal interactions with supervisors that occurred prior to October 31, 2012, the July 2012 transfer assignment, the July 2012 denial of her two reconsideration requests, and the July 2012 surrender of her service weapon.  To the extent Plaintiff's disability discrimination claim under the Rehabilitation Act is based on these acts, it is time-barred by the one-year statute of limitations, which was not tolled by a timely-filed EEOC charge and ran before

Plaintiff filed her Complaint.  Accordingly, the Court **GRANTS** WMATA's motion for summary judgment as to Plaintiff's disability discrimination claim under the Rehabilitation Act (Count Two) insofar is it rests on "verbal harassment" predating October 31, 2012, her July 2012 transfer assignment and associated denials of her reconsideration requests, and the July 2012 surrender of her service weapon.

### 3.  Failure to State a Claim Upon Which Relief May Be Granted

The Court turns next to assessing whether, based on the remaining factual allegations underlying her claim of disability discrimination, Plaintiff has stated a plausible claim for relief under the Rehabilitation Act.  The Court concludes that she has not done so.

Section 504 of the Rehabilitation Act prohibits any "program or activity receiv[ing] Federal financial assistance" from excluding, denying benefits to, or discriminating against an "otherwise qualified individual with a disability . . . *solely* by reason of his or her disability."  29 U.S.C. § 794(a) (emphasis added).  To state a claim of disability discrimination based on a failure to accommodate under Section 504, a plaintiff must show "(1) that [she] was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of [her] disability; (3) that with reasonable accommodation [she] could perform the essential functions of the position; and (4) that the employer refused to make such accommodations."  *Stewart v. St. Elizabeths Hosp.*, 593 F. Supp. 2d 111, 113 (D.D.C. 2009) (internal citations omitted).  To state a claim of disability discrimination based on disparate treatment, a plaintiff must show (1) she had a disability within the meaning of the statute, (2) she suffered an adverse employment action, and (3) the adverse employment actions "gives rise to an inference of discrimination."  *Doak v. Johnson*, 19 F. Supp. 3d 259, 271 (D.D.C. 2014), *aff'd*, 798 F.3d 1096 (D.C. Cir. 2015).  Generally speaking, pregnancy is only considered a "disability" under the Rehabilitation Act when the plaintiff also alleges

"unusual conditions" associated with the pregnancy. *See Webster v. U.S. Dep't of Energy*, 267 F. Supp. 3d 246, 266–67 (D.D.C. 2017). Though not detailed, Plaintiff does allege that her pregnancy was "high risk." WMATA "assumes" for purposes of this motion that additional medical challenges Plaintiff faced during her pregnancy are sufficient to establish that she had a "disability" within the meaning of the statute. Def.'s Mot. 17, n.2.

It is not entirely clear if Plaintiff relies on a "failure to accommodate" or "disparate treatment" theory of WMATA's liability. Although the allegations underlying her denied reconsideration request seem to support a theory of WMATA's alleged failure to accommodate her during her pregnancy in 2012, those claims are time-barred.

The remaining discriminatory acts upon which Plaintiff's Rehabilitation Act claim rely appear to support a "disparate treatment" theory of liability; she claims, for example, that she received unfair performance evaluations and was later terminated "because of" her pregnancy. Compl. ¶¶ 14, 38–42. WMATA argues that Plaintiff's factual allegations do not support a plausible inference that alleged discrimination occurred solely "because of" her pregnancy. Plaintiff gave WMATA notice of her pregnancy in May 2012, went on maternity leave in the fall of 2012, and then returned to work in February 2013. *See supra* Section I(A). All surviving discriminatory events relied upon by Plaintiff (*i.e.*, those timely included in an EEOC charge) occurred in February 2013 or later—that is, *after* Plaintiff's pregnancy. This timing does not automatically preclude Plaintiff from plausibly stating a claim for disability discrimination based on her pregnancy if, for example, the alleged discriminatory act was based on conduct that occurred during her pregnancy. *See Webster*, 267 F. Supp. 3d at 267. However, Plaintiff pleads no facts to establish a nexus between the timing of those events and her pregnancy in 2012—and

so she has failed to state a plausible claim of discrimination based "solely" on her pregnancy. Accordingly, the Court **GRANTS** Defendant's Motion to Dismiss as to Count 2 of the Complaint.

### C. Hostile Work Environment under Title VII  and the Rehabilitation Act (Count One)

Finally, the Court addresses Plaintiff's hostile work environment claim, which she brings under both Title VII and the Rehabilitation Act.  As with Plaintiff's other claims, WMATA argues that this claim should be dismissed for failure to exhaust administrative remedies and failure to state a claim.  Because the Court concludes that Plaintiff has failed to state a claim for hostile work environment, it does not address WMATA's arguments regarding exhaustion.  *Outlaw v. Johnson*, 49 F. Supp. 3d 88, 90–91 (D.D.C. 2014).

To bring an actionable hostile work environment claim, a plaintiff must establish that "the workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe and pervasive to alter the conditions of [her] employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21  (1993) (quotation marks and citations omitted).  Plaintiff must demonstrate that she (1) is a "member of a protected class"; (2) was "subjected to unwelcome harassment"; (3) the harassment "occurred because of the plaintiff's protected status"; (4) the harassment "was severe to a degree which affected a term, condition, or privilege of employment"; and (5) the employer "knew or should have known about the harassment, but nonetheless failed to take steps to prevent it." *Outlaw*, 49 F. Supp. 3d at 91 (quoting *Peters*, 873 F. Supp. 2d at 189) (internal quotation marks omitted).

Plaintiff offers only conclusory allegations of a hostile work environment, "parrot[ing] the legal standard" for such a claim.  *Outlaw*, 49 F. Supp. 3d at 91; *see, e.g.*, Compl. ¶ 32 (alleging that Plaintiff "was routinely discriminated against and the employer engaged in an unwelcomed and persistent pattern of severe or pervasive harassment set forth herein, which interfered with

Plaintiff's work performance and/or created a hostile and offensive workplace"). Such conclusory statements are insufficient to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 ("recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

Examining the factual content of Plaintiff's EEOC charges does not save her claim. In her First EEOC Charge, Plaintiff claims only that she had been "harassed and treated differently than males and non-pregnant employees" with "respect to requests for transfers to administrative and limited duty assignments, surrender of service weapon, and unfair performance evaluations." First EEOC Charge. She further claims that she had been "harassed" due to her participation as a witness in her co-worker's EEOC charge. Pl.'s Letter Clarifying First EEOC Charge at 2. In her letter clarifying her Second EEOC Charge, Plaintiff asserts that she has been "subjected to a hostile work environment" since May 2012. But the facts she goes on to describe address discrete acts, including, for example, her performance evaluations and her appeals thereof. In sum, Plaintiff attempts to "bootstrap" her allegations of "discrete acts of discrimination . . . into a broader hostile work environment claim." *Rattigan v. Gonzales*, 503 F. Supp. 2d 56, 81 (D.D.C. 2007). But "[a] plaintiff may not combine discrete acts to form a hostile work environment claim without meeting the required hostile work environment standard." *Id.* (quotation marks omitted). Plaintiff has not alleged facts sufficient to show that any of these alleged actions were part of a "severe and pervasive pattern of harassment." *Wise v. Ferriero*, 842 F. Supp. 2d 120, 126–27 (D.D.C. 2012). Nor does she offer facts sufficient to demonstrate that any alleged harassment "affected a term condition or privilege of employment." *Outlaw*, 49 F. Supp. 3d at 91. Accordingly, the Court shall **GRANT** Defendant's Motion to Dismiss as to Count One of the Complaint and shall **DISMISS** Plaintiff's hostile work environment claim.

Finally, to the extent Plaintiff seeks to pursue a "constructive discharge" claim, that shall also be dismissed.  The Complaint makes no mention of "constructive discharge."  However, in response to WMATA's effort to rebut the "constructive discharge" claim in Plaintiff's Third EEOC claim, Plaintiff contends in her Opposition that she has pled sufficient facts to state a claim for "constructive termination."   *See* Pl.'s Opp'n at 18.  A constructive discharge claim requires Plaintiff to show (1) she was subjected to severe and pervasive harassment that altered the conditions of her employment (a hostile working environment), and (2) the work environment was "so intolerable that a reasonable person would have felt compelled to resign." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 147 (2004); *Steele v. Schafer*, 535 F.3d 689, 695 (D.C. Cir. 2008). For the same reasons Plaintiff failed to state a plausible hostile work environment claim, she has also failed to state a plausible constructive discharge claim under Title VII.

*** 

Based on the Court's above discussion, the remaining claims are Plaintiff's Title VII claims for sex discrimination (Count Three), race discrimination (Count Four), and retaliation (Count Five)—*only* insofar as these claims rely on: Plaintiff's February 2013, March 2013, and January 2014 performance evaluations; her February 2014 suspension and March 2014 termination; and the allegations raised in her Third EEOC Charge.

## IV.    CONCLUSION

For the foregoing reasons, as set forth above, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** WMATA's Motion to Dismiss or, in the Alternative, for Summary Judgment. An appropriate order accompanies this Memorandum Opinion.

/s/
_____
COLLEEN KOLLAR-KOTELLY
United States District Judge

Date: August 10, 2022