Planet Depos
We Make It Happen™

# Transcript of Amanda Betts

**Date:** May 24, 2023
**Case:** Betts -v- Washington Metropolitan Area Transit Authority

**Planet Depos**
**Phone:** 888.433.3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

IN THE DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

------------------------------x
AMANDA BETTS, :
Plaintiff, :
:
v. : CASE NO.
WASHINGTON METROPOLITAN AREA : 1:21-CV-01861-CKK
TRANSIT AUTHORITY, :
Defendant. :
------------------------------x

Deposition of AMANDA BETTS
Conducted Remotely Via Zoom
Wednesday, May 24, 2023
10:23 a.m.

Job No.: 492068
Pages: 1 - 62
Reported by: Alexia Vandermeulen, CVR



Deposition of AMANDA BETTS, conducted remotely.

Pursuant to notice, before Alexia Vandermeulen, Certified Verbatim Reporter, Notary Public in and for the Commonwealth of Pennsylvania.



APPEARANCES

ON BEHALF OF THE PLAINTIFF:
DONNA RUCKER, ESQUIRE
TULLY RINCKEY PLLC
2001 L Street Northwest
Suite 902
Washington, DC 20036
(202) 787-1900

ON BEHALF OF THE DEFENDANT:
M. RICHARD COEL, ESQUIRE
WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY
300 7th Street Southwest
Washington, DC 20024
(202) 962-1013



INDEX TO PROCEEDINGS

EXAMINATION OF AMANDA BETTS PAGE
By MR. COEL............................ 5

INDEX TO EXHIBITS
(Exhibits attached to transcript.)

| EXHIBIT | | PAGE |
|---|---|---|
| 1 | Resume................................ | 10 |
| 2 | Performance Evaluations............... | 20 |
| 3 | Evaluation Appeal Memorandum 2/2013.... | 21 |
| 4 | Evaluation Appeal Memorandum 3/2013.... | 21 |
| 5 | Corrective Action Plan................ | 22 |
| 6 | Letter of Separation.................. | 23 |
| 7 | Arbitration Award..................... | 26 |
| 8 | Plaintiff's Answers to Interrogatories | 28 |
| 9 | Report of Investigation............... | 54 |
| 10 | Resignation Memorandum................ | 57 |
| 11 | E-mails............................... | 58 |

5

PROCEEDINGS

AMANDA BETTS, after having been first duly sworn, was examined and testified as follows:

EXAMINATION BY COUNSEL FOR DEFENDANT

BY MR. COEL:

Q. Good morning, Ms. Betts. Have you ever had your deposition taken before?

**A. Not that I can recall.**

Q. No worries. I just will go over some rules of the road to help make this go a little smoother. Do you understand that even though we're not in a court and this is happening over Zoom that the testimony you're giving today has the same effect as if you were in court?

**A. Yes.**

Q. And we have a court reporter here creating a transcript. So it's important that we don't talk over each other. In the course of a regular conversation, you may anticipate the end of my question and start answering before I finish. But if you can allow me to finish a question before you begin your answer, I will try

6

to give you the same courtesy. Is that fair?

**A. Yes.**

Q. You are doing a great job with an audible yes or no. As we said, we're making a transcript so shakes of the head, shrugs of the shoulders, uh-huhs, and uh-uhs will not be picked up. So please do your best to give an audible response when you can. Is that okay?

**A. Yes.**

Q. If you answer a question, I am going to assume that you understood my question. So if you don't understand, please say so and I can attempt to rephrase. Is that fair?

**A. Yes.**

Q. Now, your attorney is present and there may come a time where she objects. As you can see, there is no judge on the call and no judge available to rule on the objections. So unless you receive an instruction not to answer, you still have to answer the question. Do you understand?

**A. Yes.**

7

Q. There may come a time when you want a break. That's fine. All of the parties have to agree to go off the record before doing so, and we will not do so if there is a question pending, okay?

**A. Okay.**

Q. Have you taken any medication or drugs that could affect your memory or ability to be truthful today?

MS. RUCKER: Objection. You can answer.

**A. No, I have not.**

Q. Okay. Can you please state your full name?

**A. Amanda Maxine Betts.**

Q. And what is your current address?

**A. My current address is 12524 Kempston Lane, Woodbridge, Virginia 22192.**

Q. How long have you lived at that address?

**A. Since December 2007.**

Q. Does anybody live at that address with you?

**A. Yes. My three little ones. My three**

8

**children.**

Q. Can you give their ages?

**A. Sure. My oldest is Bailey. He is 14. I have a daughter named Israel. She is 12. And youngest, her name is Camille. She is ten.**

Q. Between the years 2012 and present, did you have any other people living with you?

**A. 2012? Not regularly, but yes.**

Q. Okay. And who was that?

**A. Edwin Ferrell, my children's father.**

Q. And what time period would you say he lived with you?

**A. It wasn't consistent. I wouldn't be able to give a time period because it wasn't consistent.**

Q. So inconsistent. Any number of years or is there a period when it definitively ended?

**A. It definitively ended -- I can't recall. It's been some years.**

Q. That's fine. Can you describe your education background, please?

**A. I'm sorry. My sister did live here**

9

**between -- well, from -- I can't recall the years. My sister and her son did live here for a few years.**
Q. Okay. And that would be sometime between 2012 and present?
**A. Yes. Correct.**
Q. Thank you. Can you describe your education background, please?
**A. I have a bachelor's in criminology criminal justice from the University of Maryland College Park.**
Q. And when did you receive that degree?
**A. In 2004.**
Q. Do you have any other education?
**A. Yes. I've attended several grad schools. At present, I am attending Baker College for my MBA.**
Q. Have you obtained any other degrees beyond your bachelor's degree so far?
**A. No.**
Q. And can you see this document that I am sharing with you right now?

10

(BETTS Exhibit 1 was marked for identification and will be attached to the transcript.)
**A. Yes, I can.**
Q. Okay. I'll confess, I don't know that I have the ability to give you control to scroll through it. So I can wait for you to review the first page before I move on. Just indicate when you would like me to move on.
**A. Yes. Yes. Yes. Yes. Yes. I've reviewed it.**
Q. Thank you. Can you identify this document?
**A. I'm sorry?**
Q. Can you identify what this document is?
**A. This document is my resume.**
Q. And it shows the first entry here, relevant work experience, March 2019 to July '22. It's that the most up-to-date resume that you have?
**A. No.**
Q. So are you currently employed?

11

**A. Yes, I am.**
Q. Okay. And where are you currently employed?
**A. I am currently employed at Capital One.**
Q. Okay. And how long have you been employed at Capital One?
**A. Only for a couple of months.**
Q. Okay. Can you give me your start date at Capital One?
**A. It was -- I believe it was mid-March.**
Q. And what is your role at Capital One?
**A. I work in tech risk.**
Q. Is that the title of your job?
**A. Yes. Principal associate in tech risk -- technology risk.**
Q. Can you describe your salary with that job?
**A. I'm sorry. You would like a number?**
Q. Yes. What is your salary that you were hired at for that job?
**A. I currently make 135,000.**
Q. Okay. Are any bonuses available?

12

**A. Not that I'm aware of. Not that I'm aware.**
Q. Prior to your role at Capital One that started around mid-March of this year, were you employed?
**A. Yes.**
Q. Okay. Can you, I guess, describe for me the jobs that you may have held between July 2022 and mid-March of this year?
**A. Let's see. I worked at a consulting firm from -- it's called FTI Consulting.**
Q. What time period did you work at FTI Consulting?
**A. July until March.**
Q. Was that your only employment between July 2022 and mid-March of this year?
**A. No. I also worked for a CPA firm.**
Q. Okay. And what firm was that?
**A. It's called Kearney & Company.**
Q. Can you spell the first word?
**A. K-E-A-R-N-E-Y.**
Q. Sorry. Before we talk about your --

13

Kearney & Company, what was your role at FTI Consulting?
**A. A consultant.**
Q. What were you consulting on?
**A. Senior -- sorry. Senior cybersecurity consultant.**
Q. And what was your job as a senior cybersecurity consultant for FTI Consulting?
**A. Well, let's see. Pretty much completing cybersecurity assessments for companies. In essence, due diligence assessments looking at the cybersecurity posture of companies are purchasing other companies.**
Q. And was that role a salaried position?
**A. I don't understand the question.**
Q. Were you paid hourly? Were you paid annually? Were you paid by the job?
**A. I was paid hourly.**
Q. And what was your rate of pay by the hour?
**A. I'm sorry? What --**
Q. What was your rate of pay by the hour?

14

**A. I can't recall.**
Q. $10 an hour? $100 an hour? You don't know? Not what was charged to the client, what you were paid by FTI Consulting for your work for them.
**A. I'm sorry. My salary was 125,000. I can't recall how much I was paid hourly.**
Q. So the compensation that you received -- the money you received for working for FTI Consulting was an annual salary of 125,000 per year, correct?
**A. Correct. Yes.**
Q. Your next job that you say that you held was at K-E-A-R-N-E-Y & Company, a CPA firm?
**A. Correct.**
Q. Okay. And for what time period did you work for Kearney & Company?
**A. Kearney & Company, that was in December until present.**
Q. December 2022 until approximately mid-March when you began your work for Capital One?

15

**A. No. December 2022 until present.**
Q. So you're currently working for Kearney & Company? What is your role at Kearney & Company?
**A. I'm a consultant.**
Q. And can you describe the type of consulting work you do for Kearney & Company?
**A. IT audit remediation.**
Q. Is this a full-time or a part-time position?
**A. This position is a full-time.**
Q. Do you receive a salary for this?
**A. Yes.**
Q. Okay. And what is that?
**A. Approximately 90,000.**
Q. Okay. Are there any other work experiences not listed on this resume shared in front of you that we have not discussed so far?
MS. RUCKER: I'm just going to object as to form. You can answer.
**A. I believe -- yeah. I believe -- no. Actually, I have held other positions. I can't**

16

**recall the dates of them. Let's see. If you could scroll to the next page. Yes. I have held other positions as a consultant for several other companies. I can't recall the dates, that's the only thing.**
Q. Can you give me approximately the years that you worked as a consultant for other companies not listed on your resume?
**A. Let's see. 20 -- I believe it was 2020. That would be a guess though. From 2020 to -- I think it was -- I think January 2020 to October 2020, I held a position with DMI.**
Q. And what does that stand for?
**A. I believe it's digital management. I can't recall what the I stands for.**
Q. Okay. DMI?
**A. Yes.**
Q. Was that a full-time position?
**A. Yes, it was.**
Q. And what type of consultant work did you do for DMI between January 2020 October 2020?
**A. I'm sorry. You said, what type of**

17

**consulting work?**
Q. Yes. You identified yourself as a consultant, correct?
**A. It was more of a third-party risk assessment.**
Q. Okay. Can you describe what type of risk you were assessing?
**A. Third-party IT risk.**
Q. Can you provide an example?
**A. Let's see. So if a company has -- if a company is sharing data with a third-party vendor, what kind of risk does that vendor pose to the original company? What kind of IT controls do they have implemented to protect the data?**
Q. Okay. Other than your work for DMI, Kearney & Company, FTI Consulting, and Capital One, did you have any other jobs not listed on your resume post-employment at WMATA?
**A. Yes, one more. ArcSource Group.**
Q. Okay. Can you spell --
**A. A-R-C. Then S-O-U-R-C-E. Group.**
Q. Okay. What was your role for ArcSource

18

Group?
**A. I can't recall the exact title.**
Q. Can you describe what your job was?
**A. IT audit remediation.**
Q. And what period of time did you work for ArcSource Group?
**A. That would have been -- I believe that was -- I think it was January 2021 until June or July 2021.**
Q. Okay. And does that complete your work history?
**A. I believe so.**
Q. There came a time, of course, where you worked for the Washington Metropolitan Area Transit Authority, correct?
**A. Correct.**
Q. And what was your role while you were employed with WMATA?
**A. Initially, I started out in patrol and then I became a detective and went to the criminal investigation division.**
Q. The entire time you were employed with

19

WMATA, you were employed within the Metro Transit Police Department, correct?
**A. Correct.**
Q. And your employment began in or around 2005?
**A. Correct.**
Q. And when did you receive the promotion that you just mentioned?
**A. I can't recall the exact date. I believe it was around 2010.**
Q. Okay. As a part of your employment with Metro Transit Police Department you received performance evaluations, correct?
**A. Correct.**
Q. I am sharing with you what will be marked as Exhibit 2 to this deposition. There's eight pages in total. I will represent to you this came from plaintiff's production to WMATA during course of discovery. I want to give you a chance to review each page.
(BETTS Exhibit 2 was marked for identification and will be attached to the transcript.)

20

**A. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay.**
Q. Ms. Betts, is this a collection of performance evaluations that you've received while you were employed with WMATA?
MS. RUCKER: I'm going to object to the form. You can answer.
**A. I don't believe --**
Q. I'm not representing that it's all of them. I just said, is this a collection of performance evaluations that you have received while you were employed with WMATA?
MS. RUCKER: Objection to the form. You can answer.
**A. You were breaking up. I can answer?**
Q. Yes, please.
MS. RUCKER: No. I instruct her. Yes, you may answer.
**A. Yes.**
Q. Thank you. I'm now sharing with you a document that will be marked as Exhibit 3 for this

21

deposition. There's two pages to it. When you've finished reviewing the first page, I will move on to the second.
(BETTS Exhibit 3 was marked for identification and will be attached to the transcript.)
**A. Yes. Yes.**
Q. Ms. Betts, is this the memorandum that you authored in or around February 20, 2013, regarding an appeal of one of your performance evaluations that you received?
**A. Yes.**
Q. I'm now showing you what will be marked as Exhibit 4 for this deposition. This is also two pages and I will give you a chance to review both pages.
(BETTS Exhibit 4 was marked for identification and will be attached to the transcript.)
**A. Yes. Yes.**
Q. Ms. Betts, is this document a memorandum that you authored in or around March 20, 2013,

22

regarding appeal of a different performance evaluation?
**A. Yes.**
Q. Thank you. Ms. Betts, I am showing you now a document that we will mark for this deposition as Exhibit 5. This is 3 pages and just like all of the others, I will give you a chance to review each page.
(BETTS Exhibit 5 was marked for identification and will be attached to the transcript.)
**A. Yes. Yes. Yes. I've reviewed it.**
Q. Ms. Betts, is this a corrective action plan document that you received in or around February 20, 2013?
**A. Yes.**
Q. And is that your signature on page 2?
**A. Yes.**
THE WITNESS: I'm sorry. Can we take a quick break?
MR. COEL: Five minutes?
THE WITNESS: Yes.

23

MR. COEL: We can go off the record for five minutes. That's fine.
(Whereupon, there was a recess in the proceedings.)
BY MR. COEL:
Q. Ms. Betts, I'm showing you what will be marked as Exhibit 6 to this deposition. This document is only one page. Just let me know when you are done reviewing?
(BETTS Exhibit 6 was marked for identification and will be attached to the transcript.)
**A. Yes.**
Q. Is this your signature that appears on the bottom portion of the page?
**A. Yes, it is.**
Q. And you signed it March 6, 2014; is that correct?
**A. Yes.**
Q. So there came a time in or around March 6, 2014, when you were terminated from WMATA; is that correct?

24

**A. Correct.**
Q. And the letter I showed you in Exhibit 6 is what they gave you upon that termination; is that correct?
**A. Correct.**
Q. While you were employed as a police officer at WMATA in the early months of 2014, you were a member of a union, correct?
**A. Correct.**
Q. Can you identify that union, please?
**A. It was the fraternal order of police.**
Q. And your union had a collective bargaining agreement with WMATA; is that correct?
**A. Correct.**
Q. And pursuant to that collective bargaining agreement, you initiated what is called a grievance regarding your termination, correct?
**A. Correct.**
Q. As a part of the procedures outlined in the collective bargaining agreement between your union and WMATA, you ultimately had an arbitration regarding the propriety of your termination,

25

correct?
**A. Correct.**
Q. The challenge to WMATA's act of terminating you is based on contract rights, correct?
**A. I'm sorry. Repeat the question.**
Q. Your challenge to WMATA's termination was based on the collective bargaining agreement, correct?
MS. RUCKER: Object to the form of the question.
Q. Do you not understand the question?
**A. I do not understand the question.**
Q. Well, how about this? Can you describe for me the grounds for your grievance?
**A. I can't recall the exact verbiage --**
Q. It's okay. You can use your own words.
**A. -- for the grievance.**
Q. Can you describe in your own words what your grievance was?
**A. It was excessive -- I believe it was excessive discipline.**

26

Q. Based on what? What, if you know, gives a union member a right to initiate this process?
**A. Based on a violation of the contract.**
Q. And your grievance went all the way through to an arbitration, correct?
**A. Yes, it did.**
Q. And in or around January 28, 2015, you received the results of that arbitration, correct?
**A. Correct. It was determined to be -- I'm sorry. I was trying to recall the exact verbiage, but --**
Q. That's fine. I am showing you now what we will mark for your deposition as Exhibit 7. It is four pages. I will also give you the chance to review each page.
(BETTS Exhibit 7 was marked for identification and will be attached to the transcript.)
**A. Yes. Yes. I have reviewed it. Yes. Yes. I've reviewed it.**
Q. Is this the award and dissenting opinion that you received on or about the end of

27

January 2015 as the result of your arbitration grieving your termination with WMATA?
MS. RUCKER: I'm sorry, counsel. You said, is this the award -- and you said, dissenting opinion?
MR. COEL: That was my question, yes.
MS. RUCKER: Okay. Thank you. I just didn't hear the words you used. Thank you.
Q. Ms. Betts, do you need me to restate my question?
**A. Please.**
Q. Is this the award and dissenting opinion that you received at the end of January 2015 as a result of your arbitration grieving your termination with WMATA?
**A. Yes.**
Q. As a result of the arbitration, you were ordered to be reinstated by the arbitration panel, correct?
**A. Correct. It was determined to be a wrongful termination, and I was to be reinstated and made whole.**

28

Q. Now, showing you what we will mark for your deposition as Exhibit 8. This document is quite a bit longer than the others, unfortunately. It's 17 pages. It should look familiar, at least. I will allow you the chance to review each page. Just let me know, and we will go through just like the last.
**A. Yes, I reviewed it. Yes. Yes. Yes. Yes. Yes. Yes, I reviewed it. Yes. Yes. Yes. Yes. Yes. Yes. Yes. Yes. Yes. Yes.**
Q. On page 16, about the middle of the page after the dash, S, dash, it has your typed, written name. Does that represent an electronic version of your signature on this document?
**A. Yes.**
Q. Is this document plaintiff's answers to WMATA's interrogatories?
**A. Yes.**
Q. And to the best of your knowledge, information, and belief, are your answers complete and truthful?
**A. Yes.**

29

Q. After receiving the arbitration award and order mandating reinstatement, when were you reinstated by WMATA?
**A. I believe it was March -- the beginning of March I was notified. I'm sorry. The day of March 2015 I was notified.**
Q. And as part of your reinstatement, you are required to go through a recertification process; is that correct?
**A. I'm sorry. Can I go back to the previous question?**
Q. I don't understand what you mean. The question was when were you reinstated after the arbitration award order that you received in 2015.
**A. Right. I was notified in February 2015. I wasn't actually returned until March. Just a clarification.**
Q. Okay. What do you mean by notified?
**A. I was notified via telephone of reinstatement in February.**
Q. And what was the conversation you had in February regarding the reinstatement?

30

**A. It was a conversation with a union representative just notifying me of my reinstatement.**
Q. So that was not a WMATA employee, but somebody that represented your union gave you a call in February 2015 regarding your return to work status?
**A. Correct.**
Q. And did he or she provide a specific date of return or any other information during that call?
**A. Not that I can recall. I believe he -- from my recollection, he advised that Lieutenant Greg Hanna would be contacting me. And at the beginning of March Lieutenant Greg Hanna did reach out.**
Q. As part of your reinstatement to the Metro Transit Police Department, WMATA required you to go through a recertification process, correct?
**A. Correct.**
Q. Can you describe, generally, what the

31

certification process is to be employed at the Metro Transit Police Department?
**A. I'm sorry. To be an officer, or what they were requiring me?**
Q. Generally, you have to have some sort of certification to be employed the Metro Transit Police Department as you were as a detective, correct?
**A. Correct. And that would have been certification in Maryland, DC, and Virginia.**
Q. So, essentially, the certification is so that you can operate as a law enforcement officer, correct?
**A. Correct.**
Q. And it's in all three jurisdictions, correct?
**A. I can't recall -- I can't recall the requirements for DC and Virginia. However, for Maryland, the Maryland Police Training Commission would have to be notified of the status of the officer.**
Q. Okay. I guess I don't understand your

32

answer. My question was about the recertification process that -- I guess, just, generally, the certification process, rather, prior to employment with the Metro Transit Police Department as a law enforcement officer in that you had to be certified by, Maryland, DC, and Virginia to operate --
**A. Correct.**
Q. -- because the transit system operates in all three jurisdictions, correct?
**A. Correct. It does.**
Q. So WMATA then required you to go through this process again in or around March 2015, correct?
**A. Correct. They were requiring me to go through a full background investigation, which I would not have done if I were not wrongfully terminated.**
Q. That wasn't my question. My question was, WMATA required you to go through and get recertified in each of the three jurisdictions as part of your reinstatement process in March 2015,

33

correct?
**A. I can't recall -- I can't recall the exact requirements for DC and Virginia. However, they were requiring me to complete a full background investigation for recertification.**
Q. And, additionally, WMATA required you to use your own funds to get recertified; is that correct?
**A. Correct. I was forced to use my own funds to work when I was -- so when I returned, I was assigned to a parking lot. To enter and exit the lot, I had to pay my own personal funds.**
Q. That wasn't my question. I'm sorry. My question was about the recertification process. It was very narrow.
**A. Recertification process -- for the recertification process, yes, I was forced to use my own funds. Correct.**
Q. And how much money were you required to spend as part of that recertification process?
**A. I can't recall exactly.**
Q. Was it an application fee?

34

**A. I can't recall.**
Q. What was the money used for as a part of the recertification process?
**A. WMATA was requiring me to obtain transcripts, driving records, and I can't recall the other items that they were requesting.**
Q. So where was the cost involved that you spent out-of-pocket as part of the recertification process?
**A. Obtaining that documentation and --**
Q. So obtaining your driving record from your home jurisdiction, for example, is a personal fund that you had to spend when you got recertified?
**A. Correct. A personal fee.**
Q. And do you know how much money that you had to spend in order to obtain that?
**A. I can't recall.**
Q. Did you, in fact, obtain your driving record as part of this process?
**A. I can't recall how -- what I did and did not complete. I can't recall that.**

35

Q. And do you know how much money you spent of your personal funds as part of the recertification process?
**A. I can't recall.**
Q. Are you aware of any other Metro Transit Police Department employee reinstated after termination who did not have to go through a recertification process?
**A. I'm sorry. Repeat the question.**
Q. Are you aware of any other Metro Transit Police Department employee who was reinstated after termination that did not have to go through a recertification process?
**A. Yes. William Birmingham. He wasn't forced to go through a full background investigation.**
Q. That wasn't my question. My question --
MS. RUCKER: I'm going to object for the record to the argumentation with the -- arguing with the actual witness. If you can, restate it, but the record shows --
MR. COEL: I don't need to restate a

36

question that she didn't answer, Ms. Rucker, and I would appreciate you not to do speaking objections during my deposition. Thank you. I was --
MS. RUCKER: We're going to remain civil, counsel. We're going to remain civil during this investigation. And to the extent that I think it's argumentative, I'm going to make a record.
MR. COEL: You made your point, Ms. Rucker. Thank you.
Q. Ms. Betts, my question wasn't about a background investigation. My question was about the recertification process. So I will restate it. Are you aware of a Metro Transit Police Department employee who was reinstated after termination who did not have to go through a recertification process?
MS. RUCKER: Objection. Asked and answered. You can answer again.
**A. So the background investigation is part of the recertification process. At least, that's what was told to me. And I was told to complete a**

37

**full background investigation. Do I know of an employee that was terminated and was not forced to complete a full investigation? Yes. William Birmingham.**
Q. Okay. Again, you changed my question before you answered it. That's fine. Other than William Birmingham, are you aware of any other Metro Transit Police Department employees who were terminated, reinstated, and did not have to go through a recertification process?
**A. I can't recall any others.**
Q. What was William Birmingham's job title upon reinstatement?
**A. William Birmingham's title was officer.**
Q. And when was he terminated?
**A. I can't recall.**
Q. When was he reinstated?
**A. I can't recall that either.**
Q. When he was reinstated, who were his supervisors?
**A. When he was reinstated? I don't know. I can't recall his immediate supervisor.**

38

Q. Do you know anybody in his chain of command when he was reinstated?
**A. It would have been administrative -- to the best of my knowledge, it would have been the administrative sergeant at the time.**
Q. Do you have a name?
**A. I can't recall.**
Q. What were William Birmingham's duties as an officer after reinstatement?
**A. I'm sorry. Repeat the question.**
Q. What were William Birmingham's duties within the Metro Transit Police Department as an officer after reinstatement?
**A. I can't recall.**
Q. Can you generally describe his job after reinstatement?
**A. From what I can recall, it was an officer while his -- while he was coming back on board. So it would have been officer.**
Q. What does an officer do at the Metro Transit Police Department?
**A. So him coming back on board, he would**

39

**have been placed in an admin role. He would have been placed in an admin role. So, immediately, he wouldn't have been in -- back on patrol as a normal officer.**
Q. What did William Birmingham do in an admin role before being placed back on patrol?
**A. He was -- during his admin time -- I can't recall. But he was -- his work location was the Jackson Graham building.**
Q. Why would he be required to be in an administrative position before going on patrol after reinstatement?
**A. I'm sorry. Repeat the question.**
Q. Why would he be required to be in an administrative role prior to being on patrol after reinstatement?
**A. I am not sure.**
Q. Is he a full-time administrative employee?
**A. No, he was not.**
Q. So post-reinstatement, his role was eventually to be on patrol, correct?

40

**A. Correct.**
Q. But there was a time period in which he was assigned desk duty, essentially, correct?
**A. Correct.**
Q. But is your testimony that you are unsure why there's a transition of administrative role before being fully on-duty, correct?
**A. Correct. Correct.**
Q. Is it possible that he was assigned an administrative role while he was seeking recertification before being deployed as a full-time patrol officer?
MS. RUCKER: Objection. Calls for speculation.
Q. You can answer.
**A. I'm sorry. Repeat the question.**
Q. Is it possible that he was placed in an administrative role because he was seeking recertification before he was deployed as a patrol officer?
MS. RUCKER: Same objection.
**A. Is that possible?**

Q. Yes.
**A. Yes, it is possible. However, he was not required to complete a full background investigation.**
Q. Okay. My question remains about the recertification process. I'm not focused on the background investigation piece of that right now. Unless, of course, you're telling me it is impossible to receive recertification without the background investigation. So let me break that down. Is it impossible for somebody to go through the recertification process after reinstatement without going through a background investigation?
**A. Yes. That is possible.**
Q. Okay. I'm talking then -- I'm talking about separate things. Recertification and background investigation, then, are separate topics for the purposes of these questions right now. To the best of your knowledge, was William Birmingham required to go through recertification after reinstatement?
**A. Yes. All officers and detectives are required for recertification. However, not all officers have been required to complete a full background investigation.**


Q. I understand now. Thank you. As part of William Birmingham's recertification process, do you know whether he was required to submit transcripts, driving records, or other background documents?
**A. Repeat the question.**
Q. As part of William Birmingham's recertification process post-reinstatement, do you know whether he was required by WMATA to submit the same types of documents that you were asked to submit, including a driving record, transcripts, and items you had mentioned during the course of your deposition?
**A. Not that I'm aware of. He wasn't required.**
Q. Okay. You allege in your complaint that after reinstatement, you were not provided with proper access to a bathroom; is that correct?
MS. RUCKER: Objection to the form of the question. You can answer.


**A. Correct. I was not provided ID card, keys, radio. I wasn't --**
Q. I understand. I want you to listen just to my question.
MS. RUCKER: But you have to let the witness answer your question. You can't --
MR. COEL: I do not have to let the witness answer whatever she wants. We're trying --
MS. RUCKER: You cannot interrupt the witness. Please allow her to finish her --
MR. COEL: I'm not going to allow a runaway witness to just start talking about whatever she wants to talk about.
(Simultaneous speaking.)
MR. COEL: Ms. Rucker, do we need to go off the record and have this discussion off the record?
MS. RUCKER: I want this on the record because you can't badger the witness. If you --
MR. COEL: I'm not badgering the witness, Ms. Rucker. I'm only trying to get her to answer the question that is asked and not stray, giving testimony that is not solicited. If she --


(Simultaneous speaking.)
(Court reporter interruption.)
MS. RUCKER: You have to stop yelling, please. It's intimidating to the witness and it's unprofessional. Your hands, throwing them up in the air and all of that doesn't have to occur, Mr. Coel.
MR. COEL: It does. It absolutely does. Your outburst is uncalled for.
MS. RUCKER: I have a right to make a record and you always talk over me. You have to let me make my record.
(Simultaneous speaking.)
(Court reporter interruption.)
(Discussion off the record.)
MS. RUCKER: I am stating on this record that the witness should be allowed to answer her question, even if you don't think she's answering

your question. Please permit her to finish, and then you can redirect her. It is rude to cut her off.

MR. COEL: And I will state on the record that you will have a chance to redirect the witness during your own question time.

BY MR. COEL:

Q. Ms. Betts, as part of your complaint in this case you allege that after reinstatement in or around March 2015, WMATA did not provide you access to a bathroom; is that correct?

**A. Correct. They did not provide me a lot of things, such as ID, keys, radio.**

Q. Thank you. Can you please describe specifically regarding the access to the bathroom incident and what you are talking about, in your own words?

**A. So to access the bathroom you need keys and so I was not provided the keys. I could not even provide identification to the station manager. Once I asked him to use the bathroom, he was like, it's only for employees and I could not**



**provide an ID because I was told to go to -- directly to the lot. So I explained my situation to the station manager and it was embarrassing. It was humiliating to have to explain how I was --**

Q. I guess I'm failing to understand some of this.

MS. RUCKER: For the record, the witness wasn't finished answering.

Q. When you say you were not provided access to a bathroom, did somebody prevent you -- you asked permission from a supervisor to use the restroom and that was denied?

**A. The station manager told me he cannot open the bathroom for me because it is for employees only and I --**

Q. Were you working -- I guess, what day was this? And was this multiple days? And where was it?

**A. I can't recall the date.**

Q. Was it one day or more than one day?

**A. I believe it was Greenbelt parking lot. I'm sorry. I can't recall if it was on multiple**



**occasions.**

Q. For how long were you working in or around the Greenbelt parking lot?

**A. I can't recall the time frame, but it was my admin duty assignment -- my initial admin duty assignment once I returned.**

Q. Was it for a week or a month, do you remember? Can you guess? One day? A week? A month? Do you know how long you were working at this time period at the Greenbelt parking lot?

**A. I can't recall.**

Q. Okay. So for some time -- an unknown number of days -- you were working out of the Greenbelt parking lot as part of your admin duty upon reinstatement at WMATA, correct?

**A. Correct.**

Q. During your entire time working there, you never were allowed to use the restroom -- the closest restroom or any WMATA restroom?

MS. RUCKER: Objection. Mischaracterizes the witnesses statement and assumes facts not in evidence. You can answer.



**A. That is not accurate. It was my initial assignment in admin so it would have been the first few days, I believe.**

Q. And did you have a uniform you were wearing during your employment at the Greenbelt parking lot?

**A. I'm sorry. Repeat the question.**

Q. Were you wearing a uniform?

**A. No. During admin duty you wear your own personal clothes.**

Q. Is there a dress code?

**A. Not that I'm aware of.**

Q. And is there a supervisor on site?

**A. No. At least there wasn't a supervisor on site during my time.**

Q. During your time working at the Greenbelt parking lot after reinstatement in or around March 2015, who was your supervisor?

**A. I can't recall my immediate supervisor. However, I was in communication with Lieutenant Greg Hanna because he was in charge of my reinstatement.**

Q. So was it Greg Hanna who assigned you to this position?
**A. I can't recall.**
Q. Do you know who assigned you to work at the Greenbelt parking lot in or around March 2015?
**A. It would have been Lieutenant Hanna along with another MTPD district 1 official, but I can't recall.**
Q. And it's your testimony that nobody in a management or supervisory level position was available on site at the Greenbelt parking lot when you showed up for work; is that correct?
MS. RUCKER: I'm going to object. Mischaracterizes the witnesses statement. You can answer.
**A. Correct. There was no one out in the Greenbelt lot. However, my initial -- there was no one out in the lot.**
Q. Was there anyone in the station, other than yourself, working for the Metro Transit Police Department?
**A. I'm sorry. Which station?**



Q. The one which you claimed to be denied bathroom access?
**A. Was there -- just to clarify the question, you're asking me if there was a supervisor --**
Q. I'm asking now if there was any other Metro Transit Police Department employee in the area.
**A. No. There was no other Metro Transit Police Department official on scene at Greenbelt Metro.**
Q. And it's your testimony that you were assigned by the MTPD, but no other WMATA employee was made aware of your reinstatement assignment?
**A. Correct.**
MS. RUCKER: You have to give me a moment to object. My objection is to the form of the question and mischaracterizes the evidence -- statement in evidence.
Q. And your answer, Ms. Betts?
**A. I'm sorry. Repeat the question.**
Q. I'm trying to remember exactly what it



was. I said, it's your testimony, Ms. Betts, that upon reinstatement to this position at the Greenbelt parking lot, that no other WMATA employee was made aware of your position at that time?
MS. RUCKER: Same objection. You can answer.
**A. Lieutenant Greg Hanna advised me to report to district 1 on a particular day. I believe that day was March 12, 2015. When I arrived at district 1, I could not access the building. Once an official did let me in, he wasn't made aware of my return. He had me sit in the roll call room for about an hour, if I'm recalling correctly. And officers were coming in and out. There was palpable tension because they were not made aware of my return. He had no idea I was going to be there.**
**And so I reached out to Lieutenant Greg Hanna and he spoke with the official at the time. I can't recall the official. But they agreed on my assignment and it would be Greenbelt parking**



**lot. However, I had no card, no radio, no keys.**
**Communications wasn't even made aware of my return. Even after I got my assignment, I had to call communications and let them know I was in the lot because Greenbelt Metro lot is a high-crime area. I had no way to call out if I was in danger. I had no way to call out if I was attacked. And so, no, there was no official on scene at Greenbelt lot.**
Q. And nobody else within the nearby station that was aware that you were working for WMATA at that time. Is that fair?
**A. No that I'm aware of because I had to call communications and make them aware of my return. Communications didn't even know.**
Q. Other than not having a key, was there anybody who told you you were not allowed to use the bathroom?
**A. Was there anyone that told me I wasn't allowed to use the bathroom?**
Q. Correct.
**A. The station manager advised me he can't**

53

**let me in because it is for employees only.**
Q. And you told him you --
**A. And I advised him I was an employee. And I had -- he was like, well, if you are an employee, you can show me some ID. I couldn't provide ID because I wasn't provided an ID yet, because I was told to go to the lot. And then -- I can't recall exactly when. Later on, I was told to go get an ID. However, the station manager did advise me that it's for employees only. So I had to explain my situation, which was extremely humiliating to have to explain all of that just to use the bathroom.**
Q. Did you ultimately get to use the bathroom?
**A. Yes, I did.**
Q. How long was it between your reinstatement and when you were provided a WMATA ID and keys, et cetera, if ever?
**A. I was provided my ID. I can't recall if I was provided keys. I was provided a radio. I don't recall when that occurred.**

54

Q. Was it one day? One month? Do you know?
**A. I believe it was, like, a week or so, but that would be a guess.**
Q. Ms. Betts, I am sharing with you what we will mark for this deposition as Exhibit 9 -- it's three pages. I will give you a chance to review each page before asking questions.
(BETTS Exhibit 9 was marked for identification and will be attached to the transcript.)
**A. I reviewed it. I've reviewed it. I reviewed it.**
Q. Ms. Betts, do you know what this document is?
**A. I'm sorry. Do I know what this document is?**
Q. Yes.
**A. It appears to be a ROI by Stokes and the background investigator.**
Q. Can you explain what ROI is?
**A. Report of investigation.**

55

Q. And this is regarding your recertification process after reinstatement in 2015, correct?
**A. This is the background investigation.**
Q. So this was required -- this document summarizes the background investigation required by WMATA in order to receive your recertification after reinstatement in March 2015, correct?
**A. I'm sorry. Repeat the question.**
Q. This document summarizes the background investigation process that WMATA required you to go through as part of your recertification after reinstatement in March 2015, correct?
**A. Correct.**
Q. Is it correct that on March 18, 2015, you requested an extension to complete this process -- the background investigation process?
**A. I believe so.**
Q. Is it true on or about April 2, 2015, that Chief Pavlik waived the FIT test requirement?
**A. That would -- I don't -- is there a question? I'm sorry.**

56

Q. Yes. Is it true that on or about April 2, 2015, that Chief Pavlik waived the FIT test requirement?
**A. I don't recall, like, him -- I don't recall being made aware of that.**
Q. It could be true, you just don't know one way or the other, fair?
**A. Correct.**
Q. Is it true that you made a submission on or about April 2, 2015, that was missing these items listed here on pages 1 and 2 of this document?
**A. Correct.**
Q. Is it true that on or about April 20, 2015, you resubmitted the information, but it had these bullet points missing, listed on pages 2 and 3 of this document?
**A. I believe so.**
Q. Is it true on or about May 6, 2015, that you resigned?
**A. I'm sorry. Repeat the question.**
Q. Is it true that on or about May 6, 2015,

that you resigned from your employment at WMATA?

**A. I was forced out of my position at WMATA. The background -- I think the background investigation and recertification process are being used interchangeably and that is not accurate. Recertification can be completed via a simple e-mail. And I was advised by the training department that that is the typical process for recertification.**

**Meaning, a WMATA official reaches out to the Maryland Police Training Commission and provides notification of the employee's reinstatement. They -- WMATA was using the background investigation to retaliate against me.**

Q. I'm now showing you what will be marked for this deposition as Exhibit 10. Let me know when you have had an opportunity to review it.

(BETTS Exhibit 10 was marked for identification and will be attached to the transcript.)

**A. Yes.**

Q. Is this a letter that you authored on



May 6, 2015, and provided to all the people listed in the to line at the top of the page?

**A. Correct.**

MR. COEL: I need about five minutes off the record to review notes and then I will wrap up.

(Whereupon, there was a recess in the proceedings.)

BY MR. COEL:

Q. Ms. Betts, I'm showing you what will be marked for this deposition as Exhibit 11. It is 6 pages and, just like the others, I will give you a chance to review each page.

(BETTS Exhibit 11 was marked for identification and will be attached to the transcript.)

**A. Okay. I have reviewed it. Yes, I reviewed it. I reviewed it. I reviewed it. I have reviewed it. Yes.**

Q. I only want to ask -- I don't know if you can see my highlighting. I'm not concerned about -- can you see my highlighting?



**A. Yes. I can.**

Q. I don't care to ask -- there's no substance here, right? This highlighted area. Is that fair?

MS. RUCKER: I'm sorry. What is the question you're asking her?

Q. There is no substance, no new messages, no communications with WMATA during this highlighted portion on the last page?

MS. RUCKER: Understood.

Q. Is that fair?

**A. Correct.**

Q. Okay. Ms. Betts, do you recognize these e-mails?

**A. Yes.**

Q. Is it fair to say that this is a series of e-mails between you and certain employees of WMATA around March 19, 2015, and ending March 20, 2015?

**A. Yes. WMATA civil rights office.**

MR. COEL: Okay. I guess, absent questions after Ms. Rucker has a chance to go,



this concludes my portion.

MS. RUCKER: You're tendering the witness?

MR. COEL: I'm sorry?

MS. RUCKER: You're tendering the witness? You're done with examination?

MR. COEL: Yeah. I guess absent my chance at re-cross or whatever. But, yes.

MS. RUCKER: Okay. Give me ten minutes off the record, then, so I can review my notes.

(Whereupon, there was a recess in the proceedings.)

MS. RUCKER: I have no questions. We're going to read.

(Off the record at 12:12 p.m.)

ACKNOWLEDGMENT OF DEPONENT

I, AMANDA BETTS, do hereby acknowledge that I have read and examined the foregoing testimony, and the same is a true, correct and complete transcription of the testimony given by me and any corrections appear on the attached Errata sheet signed by me.

__________________ ______________________
(DATE) (SIGNATURE)



CERTIFICATE OF REPORTER - NOTARY PUBLIC

I, ALEXIA VANDERMEULEN, CERTIFIED VERBATIM REPORTER, the officer before whom the foregoing deposition was taken, do hereby certify that the foregoing transcript is a true and correct record of the testimony given; that said testimony was taken by me and thereafter reduced to typewriting under my direction; that reading and signing was requested; and that I am neither counsel for, related to, nor employed by any of the parties to this case and have no interest, financial or otherwise, in its outcome.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my notarial seal this 24th day of MAY, 2023.

My Commission Expires: August 3, 2026

Notary Seal - Commonwealth of Pennsylvania
Alexia Vandermeulen, Notary Public
Philadelphia County
My Commission Expires August 03, 2026
Commission ID 1424185

____________________________
NOTARY PUBLIC IN AND FOR
THE COMMONWEALTH OF PENNSYLVANIA

**A**

**a-r-c**
17:21
**ability**
7:8, 10:6
**able**
8:14
**about**
12:22, 25:14, 26:22, 28:11, 32:1, 33:14, 36:11, 36:12, 41:5, 41:16, 43:14, 43:15, 45:16, 51:14, 55:19, 56:1, 56:10, 56:14, 56:19, 56:22, 58:4, 58:22
**absent**
59:21, 60:7
**absolutely**
44:12
**access**
42:21, 45:11, 45:15, 45:18, 46:10, 50:2, 51:11
**accurate**
48:1, 57:6
**acknowledge**
61:2
**acknowledgment**
61:1
**act**
25:3
**action**
4:13, 22:13
**actual**
35:20
**actually**
15:22, 29:16
**additionally**
33:6
**address**
7:15, 7:16, 7:18, 7:20
**admin**
39:1, 39:2, 39:6, 39:7, 47:5, 47:14, 48:2, 48:9
**administrative**
38:3, 38:5, 39:11, 39:15, 39:18, 40:6, 40:10, 40:18
**advise**
53:10
**advised**
30:13, 51:8, 52:22, 53:3, 57:7
**affect**
7:8
**affixed**
62:14
**after**
5:2, 28:12, 29:1, 29:13, 35:6, 35:12, 36:15, 38:9, 38:13, 38:15, 39:12, 39:15, 41:12, 41:21, 42:20, 45:9, 48:17, 52:3, 55:2, 55:8, 55:12, 59:22
**again**
32:13, 36:19, 37:5
**against**
57:14
**ages**
8:2
**agree**
7:3
**agreed**
51:21
**agreement**
24:13, 24:16, 24:20, 25:8
**air**
44:10
**alexia**
1:22, 2:4, 62:2
**all**
7:2, 20:10, 22:7, 26:4, 31:15, 32:10, 41:22, 42:1, 44:10, 53:12, 58:1
**allege**
42:19, 45:9
**allow**
5:21, 28:5, 43:12, 43:13
**allowed**
44:21, 47:18, 52:17, 52:20
**along**
49:7
**also**
12:17, 21:14, 26:14
**always**
44:15
**amanda**
1:4, 1:14, 2:1, 4:2, 5:2, 7:14, 61:2
**annual**
14:10
**annually**
13:17
**another**
49:7
**answer**
5:22, 6:10, 6:19, 6:20, 7:10, 15:20, 20:8, 20:15, 20:16, 20:19, 32:1, 36:1, 36:19, 40:15, 43:1, 43:7, 43:9, 44:2, 44:21, 47:22, 49:15, 50:20, 51:7
**answered**
36:19, 37:6
**answering**
5:20, 44:22, 46:8
**answers**
4:16, 28:16, 28:20
**anticipate**
5:19
**any**
7:7, 8:7, 8:16, 9:14, 9:18, 11:22, 15:16, 17:17, 30:10, 35:5, 35:10, 37:7, 37:11, 47:19, 50:6, 61:6, 62:10
**anybody**
7:20, 38:1, 52:17
**anyone**
49:19, 52:19
**appeal**
4:11, 4:12, 21:10, 22:1
**appear**
61:6
**appearances**
3:1
**appears**
23:14, 54:19
**application**
33:22
**appreciate**
36:2
**approximately**
14:20, 15:15, 16:6
**april**
55:19, 56:2, 56:10, 56:14
**arbitration**
4:15, 24:21, 26:5, 26:8, 27:1, 27:14, 27:17, 27:18, 29:1, 29:14
**arcsource**
17:19, 17:22,

18:6
**area**
1:8, 3:12, 18:14, 50:8, 52:6, 59:3
**arguing**
35:19
**argumentation**
35:19
**argumentative**
36:7
**around**
12:4, 19:4, 19:10, 21:9, 21:22, 22:14, 23:20, 26:7, 32:13, 45:10, 47:3, 48:18, 49:5, 59:18
**arrived**
51:11
**asked**
36:18, 42:13, 44:2, 45:21, 46:11
**asking**
50:4, 50:6, 54:8, 59:6
**assessing**
17:7
**assessment**
17:5
**assessments**
13:10, 13:11
**assigned**
33:11, 40:3, 40:9, 49:1, 49:4, 50:13
**assignment**
47:5, 47:6, 48:2, 50:14, 51:22, 52:3
**associate**
11:14
**assume**
6:11
**assumes**
47:22
**attached**
4:7, 10:2, 19:22, 21:5, 21:18, 22:10, 23:11, 26:17, 54:10, 57:19, 58:15, 61:6
**attacked**
52:8
**attempt**
6:12
**attended**
9:15
**attending**
9:16
**attorney**
6:15
**audible**
6:4, 6:7
**audit**
15:8, 18:4
**august**
62:16
**authored**
21:9, 21:22, 57:22
**authority**
1:9, 3:13, 18:15
**available**
6:18, 11:22, 49:11
**award**
4:15, 26:21, 27:4, 27:12, 29:1, 29:14
**aware**
12:1, 12:2, 35:5, 35:10, 36:14, 37:7, 42:17, 48:12, 50:14, 51:4, 51:13, 51:17, 52:2, 52:11, 52:13, 52:14, 56:5

B

**bachelor's**
9:9, 9:19
**back**
29:10, 38:18, 38:22, 39:3, 39:6
**background**
8:21, 9:8, 32:16, 33:5, 35:15, 36:12, 36:20, 37:1, 41:3, 41:7, 41:10, 41:13, 41:17, 42:3, 42:7, 54:20, 55:4, 55:6, 55:10, 55:17, 57:3, 57:14
**badger**
43:21
**badgering**
43:22
**bailey**
8:3
**baker**
9:16
**bargaining**
24:13, 24:16, 24:20, 25:8
**based**
25:4, 25:8, 26:1, 26:3
**bathroom**
42:21, 45:11, 45:15, 45:18, 45:21, 46:10, 46:14, 50:2, 52:18, 52:20, 53:13, 53:15
**became**
18:20
**because**
8:14, 32:9, 40:18, 43:21, 46:1, 46:14, 48:21, 51:16, 52:5, 52:13, 53:1, 53:6, 53:7
**been**
5:2, 8:19, 11:5, 18:7, 31:9, 38:3, 38:4, 38:19, 39:1, 39:2, 39:3, 42:2, 48:2, 49:6
**before**
2:4, 5:7, 5:20, 5:22, 7:3, 10:8, 12:22, 37:6, 39:6, 39:11, 40:7, 40:11, 40:19, 54:8, 62:3
**began**
14:21, 19:4
**begin**
5:22
**beginning**
29:4, 30:15
**behalf**
3:2, 3:10
**being**
39:6, 39:15, 40:7, 40:11, 56:5, 57:5
**belief**
28:20
**believe**
11:10, 15:21, 16:9, 16:14, 18:7, 18:12, 19:10, 20:9, 25:21, 29:4, 30:12, 46:21, 48:3, 51:10, 54:3, 55:18, 56:18
**best**
6:7, 28:19, 38:4, 41:19
**betts**
1:4, 1:14, 2:1, 4:2, 5:2, 5:6, 7:14, 10:1, 19:21, 20:4, 21:4, 21:8, 21:17, 21:21,

22:4, 22:9, 22:13, 23:6, 23:10, 26:16, 27:9, 36:11, 45:8, 50:20, 51:1, 54:5, 54:9, 54:14, 57:18, 58:10, 58:14, 59:13, 61:2
**between**
8:6, 9:1, 9:5, 12:8, 12:15, 16:21, 24:20, 53:17, 59:17
**beyond**
9:19
**birmingham**
35:14, 37:4, 37:7, 39:5, 41:20
**birmingham's**
37:12, 37:14, 38:8, 38:11, 42:5, 42:10
**bit**
28:3
**board**
38:19, 38:22
**bonuses**
11:22
**both**
21:16
**bottom**
23:15
**break**
7:2, 22:20, 41:10
**breaking**
20:16
**building**
39:9, 51:12
**bullet**
56:16

C

**call**
6:17, 30:6, 30:11, 51:14, 52:4, 52:6, 52:7, 52:14
**called**
12:11, 12:19, 24:16
**calls**
40:13
**came**
18:13, 19:18, 23:20
**camille**
8:5
**can't**
8:18, 9:1, 14:1, 14:7, 15:22, 16:4, 16:15, 18:2, 19:9, 25:16, 31:17, 33:2, 33:21, 34:1, 34:5, 34:18, 34:21, 34:22, 35:4, 37:11, 37:16, 37:18, 37:22, 38:7, 38:14, 39:8, 43:7, 43:21, 46:19, 46:22, 47:4, 47:11, 48:19, 49:3, 49:8, 51:21, 52:22, 53:8, 53:20
**cannot**
43:11, 46:13
**capital**
11:4, 11:6, 11:9, 11:11, 12:3, 14:21, 17:16
**card**
43:2, 52:1
**care**
59:2
**case**
1:7, 45:9, 62:11
**certain**
59:17
**certificate**
62:1
**certification**
31:1, 31:6, 31:10, 31:11, 32:3
**certified**
2:5, 32:6, 62:2
**certify**
62:4
**cetera**
53:19
**chain**
38:1
**challenge**
25:3, 25:7
**chance**
19:20, 21:15, 22:7, 26:14, 28:5, 45:5, 54:7, 58:13, 59:22, 60:8
**changed**
37:5
**charge**
48:21
**charged**
14:3
**chief**
55:20, 56:2
**children**
8:1
**children's**
8:10
**civil**
36:5, 59:20
**claimed**
50:1
**clarification**
29:17
**clarify**
50:3
**client**
14:3
**closest**
47:19
**clothes**
48:10
**code**
48:11
**coel**
3:11, 4:3, 5:5, 22:21, 23:1, 23:5, 27:6, 35:22, 36:9, 43:8, 43:13, 43:17, 43:22, 44:11, 44:12, 45:4, 45:7, 58:4, 58:9, 59:21, 60:4, 60:7
**collection**
20:4, 20:11
**collective**
24:12, 24:15, 24:20, 25:8
**college**
9:11, 9:16
**columbia**
1:2
**come**
6:16, 7:1
**coming**
38:18, 38:22, 51:15
**command**
38:2
**commission**
31:19, 57:11, 62:16
**commonwealth**
2:6, 62:21
**communication**
48:20
**communications**
52:2, 52:4, 52:14, 52:15, 59:8
**companies**
13:10, 13:12, 13:13, 16:4, 16:8
**company**
12:19, 13:1,

14:14, 14:17, 14:18, 15:3, 15:4, 15:7, 17:10, 17:11, 17:13, 17:16
**compensation** 14:8
**complaint** 42:19, 45:8
**complete** 18:10, 28:20, 33:4, 34:22, 36:22, 37:3, 41:3, 42:2, 55:16, 61:5
**completed** 57:6
**completing** 13:9
**concerned** 58:21
**concludes** 60:1
**conducted** 1:15, 2:1
**confess** 10:5
**consistent** 8:13, 8:15
**consultant** 13:3, 13:6, 13:8, 15:5, 16:3, 16:7, 16:20, 17:3
**consulting** 12:10, 12:11, 12:13, 13:2, 13:4, 13:8, 14:4, 14:10, 15:7, 17:1, 17:16
**contacting** 30:14
**contract** 25:4, 26:3
**control** 10:6
**controls** 17:13
**conversation** 5:19, 29:21, 30:1
**correct** 9:6, 14:11, 14:12, 14:15, 17:3, 18:15, 18:16, 19:2, 19:3, 19:6, 19:13, 19:14, 23:18, 23:22, 24:1, 24:4, 24:5, 24:8, 24:9, 24:13, 24:14, 24:17, 24:18, 25:1, 25:2, 25:5, 25:9, 26:5, 26:8, 26:9, 27:19, 27:20, 29:9, 30:8, 30:20, 30:21, 31:8, 31:9, 31:13, 31:14, 31:16, 32:8, 32:10, 32:11, 32:14, 32:15, 33:1, 33:8, 33:9, 33:18, 34:15, 39:22, 40:1, 40:3, 40:4, 40:7, 40:8, 42:21, 43:2, 45:11, 45:12, 47:15, 47:16, 49:12, 49:16, 50:15, 52:21, 55:3, 55:8, 55:13, 55:14, 55:15, 56:8, 56:13, 58:3, 59:12, 61:4, 62:5
**corrections** 61:6
**corrective** 4:13, 22:13
**correctly** 51:15
**cost** 34:7
**could** 7:8, 16:2, 45:19, 45:22, 51:11, 56:6
**couldn't** 53:5
**counsel** 5:4, 27:3, 36:5, 62:9
**couple** 11:7
**course** 5:18, 18:13, 19:19, 41:8, 42:15
**court** 1:1, 5:12, 5:14, 5:16, 44:6, 44:18
**courtesy** 6:1
**cpa** 12:17, 14:14
**creating** 5:17
**criminal** 9:10, 18:20
**criminology** 9:9
**current** 7:15, 7:16
**currently** 10:22, 11:2, 11:4, 11:21, 15:2
**cut** 45:2
**cvr** 1:22
**cybersecurity** 13:5, 13:8, 13:10, 13:12

**D**

**danger** 52:7
**dash** 28:12
**data** 17:11, 17:14
**date** 11:8, 19:9, 30:10, 46:19, 61:10
**dates** 16:1, 16:4
**daughter** 8:4
**day** 29:5, 46:16, 46:20, 47:8, 51:9, 51:10, 54:1, 62:14
**days** 46:17, 47:13, 48:3
**dc** 3:7, 3:15, 31:10, 31:18, 32:6, 33:3
**december** 7:19, 14:18, 14:20, 15:1
**defendant** 1:10, 3:10, 5:4
**definitively** 8:17, 8:18
**degree** 9:12, 9:19
**degrees** 9:18
**denied** 46:12, 50:1
**department** 19:2, 19:12, 30:18, 31:2, 31:7, 32:4, 35:6, 35:11, 36:15, 37:8, 38:12, 38:21, 49:21, 50:7, 50:10, 57:8
**deployed** 40:11, 40:19

**deponent**
61:1
**deposition**
1:14, 2:1, 5:7, 19:16, 21:1, 21:14, 22:6, 23:7, 26:13, 28:2, 36:3, 42:16, 54:6, 57:16, 58:11, 62:4
**describe**
8:20, 9:7, 11:16, 12:7, 15:6, 17:6, 18:3, 25:14, 25:19, 30:22, 38:15, 45:14
**desk**
40:3
**detective**
18:20, 31:7
**detectives**
41:22
**determined**
26:9, 27:20
**different**
22:1
**digital**
16:14
**diligence**
13:11
**direction**
62:8
**directly**
46:2
**discipline**
25:22
**discovery**
19:19
**discussed**
15:18
**discussion**
43:18, 44:19
**dissenting**
26:21, 27:5, 27:12
**district**
1:1, 1:2, 49:7, 51:9, 51:11
**division**
18:21
**dmi**
16:12, 16:16, 16:21, 17:15
**document**
9:21, 10:13, 10:15, 10:16, 20:22, 21:21, 22:5, 22:14, 23:8, 28:2, 28:14, 28:16, 54:15, 54:16, 55:5, 55:10, 56:12, 56:17
**documentation**
34:10
**documents**
42:8, 42:13
**doing**
6:3, 7:3
**done**
23:9, 32:17, 60:6
**donna**
3:3
**down**
41:11
**dress**
48:11
**driving**
34:5, 34:11, 34:19, 42:7, 42:14
**drugs**
7:7
**due**
13:11
**duly**
5:3
**during**
19:19, 30:10, 36:3, 36:6, 39:7, 42:15, 45:6, 47:17, 48:5, 48:9, 48:15, 48:16, 59:8
**duties**
38:8, 38:11
**duty**
40:3, 47:5, 47:6, 47:14, 48:9

**E**

**e-mail**
57:7
**e-mails**
4:19, 59:14, 59:17
**each**
5:18, 19:20, 22:8, 26:15, 28:5, 32:21, 54:8, 58:13
**early**
24:7
**education**
8:21, 9:8, 9:14
**edwin**
8:10
**effect**
5:14
**eight**
19:17
**either**
37:18
**electronic**
28:13
**else**
52:10
**embarrassing**
46:3
**employed**
10:22, 11:3, 11:4, 11:6, 12:5, 18:18, 18:22, 19:1, 20:6, 20:13, 24:6, 31:1, 31:6, 62:10
**employee**
30:4, 35:6, 35:11, 36:15, 37:2, 39:19, 50:7, 50:13, 51:4, 53:3, 53:5
**employee's**
57:12
**employees**
37:8, 45:22, 46:15, 53:1, 53:10, 59:17
**employment**
12:15, 19:4, 19:11, 32:3, 48:5, 57:1
**end**
5:19, 26:22, 27:13
**ended**
8:17, 8:18
**ending**
59:18
**enforcement**
31:12, 32:5
**enter**
33:11
**entire**
18:22, 47:17
**entry**
10:17
**errata**
61:7
**esquire**
3:3, 3:11
**essence**
13:11
**essentially**
31:11, 40:3
**et**
53:19
**evaluation**
4:11, 4:12, 22:2
**evaluations**
4:10, 19:13, 20:5, 20:12, 21:11
**even**
5:11, 44:22, 45:20, 52:2,

52:3, 52:15
**eventually**
39:22
**ever**
5:6, 53:19
**evidence**
47:22, 50:18, 50:19
**exact**
18:2, 19:9, 25:16, 26:10, 33:3
**exactly**
33:21, 50:22, 53:8
**examination**
4:2, 5:4, 60:6
**examined**
5:3, 61:3
**example**
17:9, 34:12
**excessive**
25:21, 25:22
**exhibit**
4:8, 10:1, 19:16, 19:21, 20:22, 21:4, 21:14, 21:17, 22:6, 22:9, 23:7, 23:10, 24:2, 26:13, 26:16, 28:2, 54:6, 54:9, 57:16, 57:18, 58:11, 58:14
**exhibits**
4:6, 4:7
**exit**
33:11
**experience**
10:18
**experiences**
15:17
**expires**
62:16
**explain**
46:4, 53:11, 53:12, 54:21
**explained**
46:2
**extension**
55:16
**extent**
36:6
**extremely**
53:11

**F**

**fact**
34:19
**facts**
47:22
**failing**
46:5
**fair**
6:1, 6:13, 52:12, 56:7, 59:4, 59:11, 59:16
**familiar**
28:4
**far**
9:19, 15:18
**father**
8:10
**february**
21:9, 22:15, 29:15, 29:20, 29:22, 30:6
**fee**
33:22, 34:15
**ferrell**
8:10
**few**
9:2, 48:3
**financial**
62:11
**fine**
7:2, 8:20, 23:2, 26:12, 37:6
**finish**
5:21, 43:12, 45:1
**finished**
21:2, 46:8
**firm**
12:11, 12:17, 12:18, 14:14
**first**
5:2, 10:8, 10:17, 12:20, 21:2, 48:3
**fit**
55:20, 56:2
**five**
22:21, 23:2, 58:4
**focused**
41:6
**follows**
5:3
**forced**
33:9, 33:17, 35:15, 37:2, 57:2
**foregoing**
61:3, 62:3, 62:5
**form**
15:20, 20:8, 20:14, 25:10, 42:22, 50:17
**four**
26:14
**frame**
47:4
**fraternal**
24:11
**front**
15:18
**fti**
12:11, 12:12, 13:1, 13:8, 14:4, 14:9, 17:16
**full**
7:12, 32:16, 33:4, 35:15, 37:1, 37:3, 41:3, 42:2
**full-time**
15:9, 15:11, 16:18, 39:18, 40:12
**fully**
40:7
**fund**
34:13
**funds**
33:7, 33:10, 33:12, 33:18, 35:2

**G**

**gave**
24:3, 30:5
**generally**
30:22, 31:5, 32:2, 38:15
**give**
6:1, 6:7, 8:2, 8:14, 10:6, 11:8, 16:6, 19:19, 21:15, 22:7, 26:14, 50:16, 54:7, 58:12, 60:9
**given**
61:5, 62:6
**gives**
26:1
**giving**
5:13, 44:3
**go**
5:9, 5:10, 7:3, 23:1, 28:6, 29:8, 29:10, 30:19, 32:12, 32:15, 32:20, 35:7, 35:12, 35:15, 36:16, 37:9, 41:11, 41:20, 43:17, 46:1, 53:7, 53:9, 55:12, 59:22
**going**
6:10, 15:19, 20:7, 35:18, 36:4, 36:5, 36:7, 39:11,

41:13, 43:13, 49:13, 51:18, 60:14
**good**
5:6
**grad**
9:15
**graham**
39:9
**great**
6:3
**greenbelt**
46:21, 47:3, 47:10, 47:14, 48:5, 48:17, 49:5, 49:11, 49:17, 50:10, 51:3, 51:22, 52:5, 52:9
**greg**
30:14, 30:15, 48:21, 49:1, 51:8, 51:19
**grievance**
24:17, 25:15, 25:18, 25:20, 26:4
**grieving**
27:2, 27:14
**grounds**
25:15
**group**
17:19, 17:21, 18:1, 18:6
**guess**
12:7, 16:10, 31:22, 32:2, 46:5, 46:16, 47:8, 54:4, 59:21, 60:7

**H**

**hand**
62:13
**hands**
44:9
**hanna**
30:14, 30:15, 48:21, 49:1, 49:6, 51:8, 51:20
**happening**
5:12
**head**
6:5
**hear**
27:8
**held**
12:8, 14:13, 15:22, 16:2, 16:12
**help**
5:10
**here**
5:16, 8:22, 9:2, 10:17, 56:11, 59:3
**hereby**
61:2, 62:4
**hereunto**
62:13
**high-crime**
52:6
**highlighted**
59:3, 59:9
**highlighting**
58:21, 58:22
**hired**
11:20
**history**
18:11
**home**
34:12
**hour**
13:20, 13:22, 14:2, 51:14
**hourly**
13:16, 13:18, 14:7
**however**
31:18, 33:3, 41:2, 42:1, 48:20, 49:17, 52:1, 53:9
**humiliating**
46:4, 53:12

**I**

**id**
43:2, 45:13, 46:1, 53:5, 53:6, 53:9, 53:19, 53:20
**idea**
51:17
**identification**
10:2, 19:22, 21:5, 21:18, 22:10, 23:11, 26:17, 45:20, 54:10, 57:19, 58:15
**identified**
17:2
**identify**
10:12, 10:15, 24:10
**immediate**
37:22, 48:19
**immediately**
39:2
**implemented**
17:14
**important**
5:17
**impossible**
41:9, 41:11
**incident**
45:16
**including**
42:14
**inconsistent**
8:16
**index**
4:1, 4:6
**indicate**
10:8
**information**
28:20, 30:10, 56:15
**initial**
47:5, 48:1, 49:17
**initially**
18:19
**initiate**
26:2
**initiated**
24:16
**instruct**
20:18
**instruction**
6:19
**interchangeably**
57:5
**interest**
62:11
**interrogatories**
4:16, 28:17
**interrupt**
43:11
**interruption**
44:6, 44:18
**intimidating**
44:8
**investigation**
4:17, 18:21, 32:16, 33:5, 35:16, 36:6, 36:12, 36:20, 37:1, 37:3, 41:4, 41:7, 41:10, 41:13, 41:17, 42:3, 54:22, 55:4, 55:6, 55:11, 55:17, 57:4, 57:14
**investigator**
54:20
**involved**
34:7
**israel**
8:4
**items**
34:6, 42:15, 56:11

**J**

**jackson**
39:9
**january**
16:11, 16:21,

18:8, 26:7, 27:1, 27:13
**job**
1:20, 6:3, 11:13, 11:17, 11:20, 13:7, 13:17, 14:13, 18:3, 37:12, 38:15
**jobs**
12:8, 17:17
**judge**
6:17
**july**
10:18, 12:8, 12:14, 12:16, 18:9
**june**
18:8
**jurisdiction**
34:12
**jurisdictions**
31:15, 32:10, 32:21
**justice**
9:10

**K**

**k-e-a-r-n-e-y**
12:21, 14:14
**kearney**
12:19, 13:1, 14:17, 14:18, 15:2, 15:3, 15:7, 17:16
**kempston**
7:16
**key**
52:16
**keys**
43:3, 45:13, 45:18, 45:19, 52:1, 53:19, 53:21
**kind**
17:12, 17:13
**know**
10:5, 14:3, 23:8, 26:1, 28:6, 34:16, 35:1, 37:1, 37:21, 38:1, 42:6, 42:12, 47:9, 49:4, 52:4, 52:15, 54:2, 54:14, 54:16, 56:6, 57:16, 58:20
**knowledge**
28:19, 38:4, 41:19

**L**

**lane**
7:17
**last**
28:7, 59:9
**later**
53:8
**law**
31:12, 32:4
**least**
28:4, 36:21, 48:14
**let's**
12:10, 13:9, 16:1, 16:9, 17:10
**letter**
4:14, 24:2, 57:22
**level**
49:10
**lieutenant**
30:13, 30:15, 48:20, 49:6, 51:8, 51:19
**line**
58:2
**listed**
15:17, 16:8, 17:17, 56:11, 56:16, 58:1
**listen**
43:4
**little**
5:10, 7:22
**live**
7:20, 8:22, 9:2
**lived**
7:18, 8:12
**living**
8:7
**location**
39:8
**long**
7:18, 11:5, 47:2, 47:9, 53:17
**longer**
28:3
**look**
28:4
**looking**
13:11
**lot**
33:11, 33:12, 45:12, 46:2, 46:21, 47:3, 47:10, 47:14, 48:6, 48:17, 49:5, 49:11, 49:17, 49:18, 51:3, 52:1, 52:5, 52:9, 53:7

**M**

**made**
27:22, 36:9, 50:14, 51:4, 51:13, 51:17, 52:2, 56:5, 56:9
**make**
5:10, 11:21, 36:7, 44:14, 44:16, 52:14
**making**
6:4
**management**
16:14, 49:10
**manager**
45:21, 46:3, 46:13, 52:22, 53:9
**mandating**
29:2
**march**
10:18, 12:14, 21:22, 23:17, 23:21, 29:4, 29:5, 29:6, 29:16, 30:15, 32:13, 32:22, 45:10, 48:18, 49:5, 51:10, 55:8, 55:13, 55:15, 59:18
**mark**
22:5, 26:13, 28:1, 54:6
**marked**
10:1, 19:16, 19:21, 20:22, 21:4, 21:13, 21:17, 22:9, 23:7, 23:10, 26:16, 54:9, 57:15, 57:18, 58:11, 58:14
**maryland**
9:10, 31:10, 31:19, 32:6, 57:11
**maxine**
7:14
**mba**
9:17
**mean**
29:12, 29:18
**meaning**
57:10
**medication**
7:7
**member**
24:8, 26:2
**memorandum**
4:11, 4:12, 4:18, 21:8, 21:21
**memory**
7:8
**mentioned**
19:8, 42:15
**messages**
59:7

**metro**
19:1, 19:12, 30:18, 31:2, 31:6, 32:4, 35:5, 35:10, 36:14, 37:8, 38:12, 38:20, 49:20, 50:7, 50:9, 50:11, 52:5
**metropolitan**
1:8, 3:12, 18:14
**mid-march**
11:10, 12:4, 12:9, 12:16, 14:21
**middle**
28:11
**minutes**
22:21, 23:2, 58:4, 60:9
**mischaracterizes**
47:21, 49:14, 50:18
**missing**
56:10, 56:16
**moment**
50:17
**money**
14:9, 33:19, 34:2, 34:16, 35:1
**month**
47:7, 47:9, 54:1
**months**
11:7, 24:7
**more**
17:4, 17:19, 46:20
**morning**
5:6
**most**
10:19
**move**
10:8, 10:9, 21:2
**mtpd**
49:7, 50:13
**much**
13:9, 14:7, 33:19, 34:16, 35:1
**multiple**
46:17, 46:22

**N**

**name**
7:13, 8:5, 28:13, 38:6
**named**
8:4
**narrow**
33:15
**nearby**
52:10
**need**
27:9, 35:22, 43:17, 45:18, 58:4
**neither**
62:9
**never**
47:18
**new**
59:7
**next**
14:13, 16:2
**nobody**
49:9, 52:10
**normal**
39:4
**northwest**
3:5
**notarial**
62:14
**notary**
2:5, 62:1, 62:20
**notes**
58:5, 60:10
**notice**
2:4
**notification**
57:12
**notified**
29:5, 29:6, 29:15, 29:18, 29:19, 31:20
**notifying**
30:2
**number**
8:16, 11:18, 47:13

**O**

**object**
15:19, 20:7, 25:10, 35:18, 49:13, 50:17
**objection**
7:10, 20:14, 36:18, 40:13, 40:21, 42:22, 47:20, 50:17, 51:6
**objections**
6:18, 36:2
**objects**
6:16
**obtain**
34:4, 34:17, 34:19
**obtained**
9:18
**obtaining**
34:10, 34:11
**occasions**
47:1
**occur**
44:10
**occurred**
53:22
**october**
16:12, 16:21
**office**
59:20
**officer**
24:7, 31:3, 31:12, 31:21, 32:5, 37:14, 38:9, 38:13, 38:18, 38:19, 38:20, 39:4, 40:12, 40:20, 62:3
**officers**
41:22, 42:2, 51:15
**official**
49:7, 50:10, 51:12, 51:20, 51:21, 52:8, 57:10
**okay**
6:8, 7:5, 7:6, 7:12, 8:9, 9:4, 10:5, 11:2, 11:5, 11:8, 11:22, 12:7, 12:18, 14:16, 15:14, 15:16, 16:16, 17:6, 17:15, 17:20, 17:22, 18:10, 19:11, 20:2, 20:3, 25:17, 27:7, 29:18, 31:22, 37:5, 41:5, 41:15, 42:19, 47:12, 58:17, 59:13, 59:21, 60:9
**oldest**
8:3
**on-duty**
40:7
**once**
45:21, 47:6, 51:12
**one**
11:4, 11:6, 11:9, 11:11, 12:3, 14:22, 17:17, 17:19, 21:10, 23:8, 46:20, 47:8, 49:16, 49:18, 50:1, 54:1, 56:7
**ones**
7:22

**only**
11:7, 12:15, 16:5, 23:8, 44:1, 45:22, 46:15, 53:1, 53:10, 58:20
**open**
46:14
**operate**
31:12, 32:7
**operates**
32:9
**opinion**
26:21, 27:5, 27:12
**opportunity**
57:17
**order**
24:11, 29:2, 29:14, 34:17, 55:7
**ordered**
27:18
**original**
17:13
**other**
5:18, 8:7, 9:14, 9:18, 13:13, 15:16, 15:22, 16:3, 16:7, 17:15, 17:17, 30:10, 34:6, 35:5, 35:10, 37:6, 37:7, 42:7, 49:19, 50:6, 50:9, 50:13, 51:3, 52:16, 56:7
**others**
22:7, 28:3, 37:11, 58:12
**otherwise**
62:12
**out**
18:19, 30:16, 47:13, 49:16, 49:18, 51:16, 51:19, 52:6, 52:7, 57:2, 57:10
**out-of-pocket**
34:8
**outburst**
44:13
**outcome**
62:12
**outlined**
24:19
**over**
5:9, 5:12, 5:18, 44:15
**own**
25:17, 25:19, 33:7, 33:9, 33:12, 33:18, 45:6, 45:17, 48:9

**P**

**page**
4:2, 4:8, 10:8, 16:2, 19:20, 21:2, 22:8, 22:17, 23:8, 23:15, 26:15, 28:5, 28:11, 54:8, 58:2, 58:13, 59:9
**pages**
1:21, 19:17, 21:1, 21:15, 21:16, 22:6, 26:14, 28:4, 54:7, 56:11, 56:16, 58:12
**paid**
13:16, 13:17, 13:18, 14:4, 14:7
**palpable**
51:16
**panel**
27:18
**park**
9:11
**parking**
33:11, 46:21, 47:3, 47:10, 47:14, 48:6, 48:17, 49:5, 49:11, 51:3, 51:22
**part**
19:11, 24:19, 29:7, 30:17, 32:22, 33:20, 34:2, 34:8, 34:20, 35:2, 36:20, 42:4, 42:10, 45:8, 47:14, 55:12
**part-time**
15:9
**particular**
51:9
**parties**
7:2, 62:10
**patrol**
18:19, 39:3, 39:6, 39:11, 39:15, 39:22, 40:12, 40:19
**pavlik**
55:20, 56:2
**pay**
13:19, 13:22, 33:12
**pending**
7:4
**pennsylvania**
2:6, 62:21
**people**
8:7, 58:1
**performance**
4:10, 19:13, 20:5, 20:12, 21:10, 22:1
**period**
8:11, 8:14, 8:17, 12:12, 14:16, 18:5, 40:2, 47:10
**permission**
46:11
**permit**
45:1
**personal**
33:12, 34:12, 34:15, 35:2, 48:10
**picked**
6:6
**piece**
41:7
**placed**
39:1, 39:2, 39:6, 40:17
**plaintiff**
1:5, 3:2
**plaintiff's**
4:16, 19:18, 28:16
**plan**
4:13, 22:14
**please**
6:7, 6:12, 7:12, 8:21, 9:8, 20:17, 24:10, 27:11, 43:12, 44:8, 45:1, 45:14
**pllc**
3:4
**point**
36:9
**points**
56:16
**police**
19:2, 19:12, 24:6, 24:11, 30:18, 31:2, 31:7, 31:19, 32:4, 35:6, 35:11, 36:14, 37:8, 38:12, 38:21, 49:21, 50:7, 50:10, 57:11
**portion**
23:15, 59:9, 60:1
**pose**
17:12

**position**
13:14, 15:10, 15:11, 16:12, 16:18, 39:11, 49:2, 49:10, 51:2, 51:4, 57:2
**positions**
15:22, 16:3
**possible**
40:9, 40:17, 40:22, 41:2, 41:14
**post-employment**
17:18
**post-reinstateme-nt**
39:21, 42:11
**posture**
13:12
**present**
6:15, 8:6, 9:5, 9:16, 14:19, 15:1
**pretty**
13:9
**prevent**
46:10
**previous**
29:11
**principal**
11:14
**prior**
12:3, 32:3, 39:15
**procedures**
24:19
**proceedings**
4:1, 23:4, 58:8, 60:12
**process**
26:2, 29:9, 30:19, 31:1, 32:2, 32:3, 32:13, 32:22, 33:14, 33:16, 33:17, 33:20, 34:3, 34:9, 34:20, 35:3, 35:8, 35:13, 36:13, 36:17, 36:21, 37:10, 41:6, 41:12, 42:5, 42:11, 55:2, 55:11, 55:17, 57:4, 57:8
**production**
19:18
**promotion**
19:7
**proper**
42:21
**propriety**
24:22
**protect**
17:14
**provide**
17:9, 30:9, 45:10, 45:12, 45:20, 46:1, 53:6
**provided**
42:20, 43:2, 45:19, 46:9, 53:6, 53:18, 53:20, 53:21, 58:1
**provides**
57:12
**public**
2:5, 62:1, 62:20
**purchasing**
13:12
**purposes**
41:18
**pursuant**
2:4, 24:15

**Q**

**question**
5:20, 5:22, 6:10, 6:11, 6:20, 7:4, 13:15, 25:6, 25:11, 25:12, 25:13, 27:6, 27:10, 29:11, 29:13, 32:1, 32:19, 33:13, 33:14, 35:9, 35:17, 36:1, 36:11, 36:12, 37:5, 38:10, 39:13, 40:16, 41:5, 42:9, 43:1, 43:5, 43:7, 44:2, 44:22, 45:1, 45:6, 48:7, 50:4, 50:18, 50:21, 55:9, 55:22, 56:21, 59:6
**questions**
41:18, 54:8, 59:22, 60:13
**quick**
22:20
**quite**
28:3

**R**

**radio**
43:3, 45:13, 52:1, 53:21
**rate**
13:19, 13:22
**rather**
32:3
**re-cross**
60:8
**reach**
30:15
**reached**
51:19
**reaches**
57:10
**read**
60:14, 61:3
**reading**
62:8
**recall**
5:8, 8:18, 9:1, 14:1, 14:7, 16:1, 16:4, 16:15, 18:2, 19:9, 25:16, 26:10, 30:12, 31:17, 33:2, 33:21, 34:1, 34:5, 34:18, 34:21, 34:22, 35:4, 37:11, 37:16, 37:18, 37:22, 38:7, 38:14, 38:17, 39:8, 46:19, 46:22, 47:4, 47:11, 48:19, 49:3, 49:8, 51:21, 53:8, 53:20, 53:22, 56:4, 56:5
**recalling**
51:15
**receive**
6:19, 9:12, 15:12, 19:7, 41:9, 55:7
**received**
14:8, 14:9, 19:12, 20:5, 20:12, 21:11, 22:14, 26:8, 26:22, 27:13, 29:14
**receiving**
29:1
**recertification**
29:8, 30:19, 32:1, 33:5, 33:14, 33:16, 33:17, 33:20, 34:3, 34:8, 35:3, 35:8, 35:13, 36:13, 36:17, 36:21, 37:10, 40:11, 40:19, 41:6, 41:9, 41:12, 41:16, 41:20,

42:1, 42:5, 42:11, 55:2, 55:7, 55:12, 57:4, 57:6, 57:9
**recertified**
32:21, 33:7, 34:14
**recess**
23:3, 58:7, 60:11
**recognize**
59:13
**recollection**
30:13
**record**
7:3, 23:1, 34:11, 34:20, 35:19, 35:21, 36:8, 42:14, 43:18, 43:19, 43:20, 44:15, 44:16, 44:19, 44:20, 45:5, 46:7, 58:5, 60:10, 60:15, 62:5
**records**
34:5, 42:7
**redirect**
45:2, 45:5
**reduced**
62:7
**regarding**
21:10, 22:1, 24:17, 24:22, 29:22, 30:6, 45:15, 55:1
**regular**
5:19
**regularly**
8:8
**reinstated**
27:18, 27:21, 29:3, 29:13, 35:6, 35:11, 36:15, 37:9, 37:17, 37:19, 37:21, 38:2
**reinstatement**
29:2, 29:7, 29:20, 29:22, 30:3, 30:17, 32:22, 37:13, 38:9, 38:13, 38:16, 39:12, 39:16, 41:12, 41:21, 42:20, 45:9, 47:15, 48:17, 48:22, 50:14, 51:2, 53:18, 55:2, 55:8, 55:13, 57:13
**related**
62:10
**relevant**
10:18
**remain**
36:4, 36:5
**remains**
41:5
**remediation**
15:8, 18:4
**remember**
47:8, 50:22
**remotely**
1:15, 2:1
**repeat**
25:6, 35:9, 38:10, 39:13, 40:16, 42:9, 48:7, 50:21, 55:9, 56:21
**rephrase**
6:13
**report**
4:17, 51:9, 54:22
**reported**
1:22
**reporter**
2:5, 5:16, 44:6, 44:18, 62:1, 62:3
**represent**
19:17, 28:13
**representative**
30:2
**represented**
30:5
**representing**
20:10
**requested**
55:16, 62:9
**requesting**
34:6
**required**
29:8, 30:18, 32:12, 32:20, 33:6, 33:19, 39:10, 39:14, 41:3, 41:20, 42:1, 42:2, 42:6, 42:12, 42:18, 55:5, 55:6, 55:11
**requirement**
55:20, 56:3
**requirements**
31:18, 33:3
**requiring**
31:4, 32:15, 33:4, 34:4
**resignation**
4:18
**resigned**
56:20, 57:1
**response**
6:8
**restate**
27:9, 35:20, 35:22, 36:13
**restroom**
46:12, 47:18, 47:19
**resubmitted**
56:15
**result**
27:1, 27:14, 27:17
**results**
26:8
**resume**
4:9, 10:16, 10:19, 15:17, 16:8, 17:18
**retaliate**
57:14
**return**
30:6, 30:10, 51:13, 51:17, 52:3, 52:15
**returned**
29:16, 33:10, 47:6
**review**
10:7, 19:20, 21:15, 22:8, 26:15, 28:5, 54:7, 57:17, 58:5, 58:13, 60:10
**reviewed**
10:11, 22:12, 26:19, 26:20, 28:8, 28:9, 54:12, 54:13, 58:17, 58:18, 58:19
**reviewing**
21:2, 23:9
**richard**
3:11
**right**
9:22, 26:2, 29:15, 41:7, 41:18, 44:14, 59:3
**rights**
25:4, 59:20
**rinckey**
3:4
**risk**
11:12, 11:15, 17:4, 17:7, 17:8, 17:12
**road**
5:10
**roi**
54:19, 54:21
**role**
11:11, 12:3,

13:1, 13:14, 15:3, 17:22, 18:17, 39:1, 39:2, 39:6, 39:15, 39:21, 40:7, 40:10, 40:18
**roll**
51:14
**room**
51:14
**rucker**
3:3, 7:10, 15:19, 20:7, 20:14, 20:18, 25:10, 27:3, 27:7, 35:18, 36:1, 36:4, 36:10, 36:18, 40:13, 40:21, 42:22, 43:6, 43:11, 43:17, 43:20, 44:1, 44:7, 44:14, 44:20, 46:7, 47:20, 49:13, 50:16, 51:6, 59:5, 59:10, 59:22, 60:2, 60:5, 60:9, 60:13
**rude**
45:2
**rule**
6:18
**rules**
5:10
**runaway**
43:14

**S**

**s-o-u-r-c-e**
17:21
**said**
6:4, 16:22, 20:11, 27:4, 51:1, 62:6
**salaried**
13:14
**salary**
11:16, 11:19, 14:6, 14:10, 15:12
**same**
5:14, 6:1, 40:21, 42:13, 51:6, 61:4
**say**
6:12, 8:11, 14:13, 46:9, 59:16
**scene**
50:10, 52:9
**schools**
9:16
**scroll**
10:6, 16:2
**seal**
62:14
**second**
21:3
**see**
6:17, 9:21, 12:10, 13:9, 16:1, 16:9, 17:10, 58:21, 58:22
**seeking**
40:10, 40:18
**senior**
13:5, 13:7
**separate**
41:16, 41:17
**separation**
4:14
**sergeant**
38:5
**series**
59:16
**set**
62:13
**several**
9:15, 16:3
**shakes**
6:5
**shared**
15:17
**sharing**
9:22, 17:11, 19:15, 20:21, 54:5
**sheet**
61:7
**should**
28:4, 44:21
**shoulders**
6:6
**show**
53:5
**showed**
24:2, 49:12
**showing**
21:13, 22:4, 23:6, 26:12, 28:1, 57:15, 58:10
**shows**
10:17, 35:21
**shrugs**
6:5
**signature**
22:17, 23:14, 28:14, 61:10
**signature-8g8ru**
62:18
**signed**
23:17, 61:7
**signing**
62:8
**simple**
57:7
**simultaneous**
43:16, 44:5, 44:17
**since**
7:19
**sister**
8:22, 9:2
**sit**
51:13
**site**
48:13, 48:15, 49:11
**situation**
46:2, 53:11
**smoother**
5:11
**solicited**
44:3
**some**
5:9, 8:19, 31:5, 46:5, 47:12, 53:5
**somebody**
30:5, 41:11, 46:10
**sometime**
9:4
**son**
9:2
**sorry**
8:22, 10:14, 11:18, 12:22, 13:5, 13:21, 14:6, 16:22, 22:19, 25:6, 26:10, 27:3, 29:5, 29:10, 31:3, 33:13, 35:9, 38:10, 39:13, 40:16, 46:22, 48:7, 49:22, 50:21, 54:16, 55:9, 55:22, 56:21, 59:5, 60:4
**sort**
31:5
**southwest**
3:14
**speaking**
36:2, 43:16, 44:5, 44:17
**specific**
30:9
**specifically**
45:15
**speculation**
40:14
**spell**
12:20, 17:20
**spend**
33:20, 34:13,

34:17
**spent**
34:8, 35:1
**spoke**
51:20
**stand**
16:13
**stands**
16:15
**start**
5:20, 11:8, 43:14
**started**
12:4, 18:19
**state**
7:12, 45:4
**statement**
47:21, 49:14, 50:19
**stating**
44:20
**station**
45:20, 46:3, 46:13, 49:19, 49:22, 52:11, 52:22, 53:9
**status**
30:7, 31:20
**still**
6:20
**stokes**
54:19
**stop**
44:7
**stray**
44:3
**street**
3:5, 3:14
**submission**
56:9
**submit**
42:6, 42:12, 42:14
**substance**
59:3, 59:7
**suite**
3:6
**summarizes**
55:6, 55:10
**supervisor**
37:22, 46:11, 48:13, 48:14, 48:18, 48:19, 50:5
**supervisors**
37:20
**supervisory**
49:10
**sure**
8:3, 39:17
**sworn**
5:3
**system**
32:9

**T**

**take**
22:19
**taken**
5:7, 7:7, 62:4, 62:7
**talk**
5:18, 12:22, 43:15, 44:15
**talking**
41:15, 43:14, 45:16
**tech**
11:12, 11:14
**technology**
11:15
**telephone**
29:19
**telling**
41:8
**ten**
8:5, 60:9
**tendering**
60:2, 60:5
**tension**
51:16
**terminated**
23:21, 32:18, 37:2, 37:9, 37:15
**terminating**
25:4
**termination**
24:3, 24:17, 24:22, 25:7, 27:2, 27:15, 27:21, 35:7, 35:12, 36:16
**test**
55:20, 56:3
**testified**
5:3
**testimony**
5:13, 40:5, 44:3, 49:9, 50:12, 51:1, 61:4, 61:5, 62:6
**th**
62:14
**thank**
9:7, 10:12, 20:21, 22:4, 27:7, 27:8, 36:3, 36:10, 42:4, 45:14
**thereafter**
62:7
**thing**
16:5
**things**
41:16, 45:13
**think**
16:11, 18:8, 36:7, 44:22, 57:3
**third-party**
17:4, 17:8, 17:11
**three**
7:22, 31:15, 32:10, 32:21, 54:7
**through**
10:7, 26:5, 28:6, 29:8, 30:19, 32:12, 32:16, 32:20, 35:7, 35:12, 35:15, 36:16, 37:10, 41:11, 41:13, 41:20, 55:12
**throwing**
44:9
**time**
6:16, 7:1, 8:11, 8:14, 12:12, 14:16, 18:5, 18:13, 18:22, 23:20, 38:5, 39:7, 40:2, 45:6, 47:4, 47:10, 47:12, 47:17, 48:15, 48:16, 51:5, 51:20, 52:12
**title**
11:13, 18:2, 37:12, 37:14
**today**
5:13, 7:9
**told**
36:22, 46:1, 46:13, 52:17, 52:19, 53:2, 53:7, 53:8
**top**
58:2
**topics**
41:18
**total**
19:17
**training**
31:19, 57:7, 57:11
**transcript**
4:7, 5:17, 6:5, 10:3, 20:1, 21:6, 21:19, 22:11, 23:12, 26:18, 54:11, 57:20, 58:16, 62:5
**transcription**
61:5
**transcripts**
34:5, 42:7,

42:14
**transit**
1:9, 3:12, 18:15, 19:1, 19:12, 30:18, 31:2, 31:6, 32:4, 32:9, 35:5, 35:10, 36:14, 37:8, 38:12, 38:21, 49:20, 50:7, 50:9
**transition**
40:6
**true**
55:19, 56:1, 56:6, 56:9, 56:14, 56:19, 56:22, 61:4, 62:5
**truthful**
7:9, 28:21
**try**
5:22
**trying**
26:10, 43:10, 44:1, 50:22
**tully**
3:4
**two**
21:1, 21:15
**type**
15:6, 16:20, 16:22, 17:6
**typed**
28:12
**types**
42:13
**typewriting**
62:7
**typical**
57:8

**U**

**uh-huhs**
6:6
**uh-uhs**
6:6
**ultimately**
24:21, 53:14
**uncalled**
44:13
**under**
62:8
**understand**
5:11, 6:12, 6:21, 13:15, 25:12, 25:13, 29:12, 31:22, 42:4, 43:4, 46:5
**understood**
6:11, 59:10
**unfortunately**
28:3
**uniform**
48:4, 48:8
**union**
24:8, 24:10, 24:12, 24:21, 26:2, 30:1, 30:5
**university**
9:10
**unknown**
47:12
**unless**
6:18, 41:8
**unprofessional**
44:9
**unsure**
40:6
**until**
12:14, 14:19, 14:20, 15:1, 18:8, 29:16
**up-to-date**
10:19
**use**
25:17, 33:7, 33:9, 33:17, 45:21, 46:11, 47:18, 52:17, 52:20, 53:13, 53:14
**using**
57:13

**V**

**vandermeulen**
1:22, 2:4, 62:2
**vendor**
17:11, 17:12
**verbatim**
2:5, 62:2
**verbiage**
25:16, 26:10
**version**
28:14
**via**
1:15, 29:19, 57:6
**violation**
26:3
**virginia**
7:17, 31:10, 31:18, 32:6, 33:3

**W**

**wait**
10:7
**waived**
55:20, 56:2
**want**
7:1, 19:19, 43:4, 43:20, 58:20
**wants**
43:9, 43:15
**washington**
1:8, 3:7, 3:12, 3:15, 18:14
**way**
26:4, 52:6, 52:7, 56:7
**we're**
5:12, 6:4, 36:4, 36:5, 43:9, 60:13
**wear**
48:9
**wearing**
48:5, 48:8
**wednesday**
1:16
**week**
47:7, 47:8, 54:3
**went**
18:20, 26:4
**whatever**
43:9, 43:15, 60:8
**whereof**
62:13
**whereupon**
23:3, 58:7, 60:11
**whether**
42:6, 42:12
**whole**
27:22
**william**
35:14, 37:3, 37:7, 37:12, 37:14, 38:8, 38:11, 39:5, 41:19, 42:5, 42:10
**within**
19:1, 38:12, 52:10
**without**
41:9, 41:13
**witness**
22:19, 22:22, 35:20, 43:7, 43:9, 43:12, 43:14, 43:21, 44:1, 44:8, 44:21, 45:6, 46:7, 60:3, 60:6, 62:13
**witnesses**
47:21, 49:14
**wmata**
17:18, 18:18, 19:1, 19:18, 20:6, 20:13, 23:22, 24:7, 24:13, 24:21, 27:2, 27:15, 29:3, 30:4, 30:18, 32:12, 32:20, 33:6, 34:4, 42:12,

45:10, 47:15, 47:19, 50:13, 51:3, 52:12, 53:18, 55:7, 55:11, 57:1, 57:3, 57:10, 57:13, 59:8, 59:18, 59:20
**wmata's**
25:3, 25:7, 28:17
**woodbridge**
7:17
**word**
12:20
**words**
25:17, 25:19, 27:8, 45:17
**work**
10:18, 11:12, 12:12, 14:4, 14:17, 14:21, 15:7, 15:16, 16:20, 17:1, 17:15, 18:5, 18:10, 30:7, 33:10, 39:8, 49:4, 49:12
**worked**
12:10, 12:17, 16:7, 18:14
**working**
14:9, 15:2, 46:16, 47:2, 47:9, 47:13, 47:17, 48:16, 49:20, 52:11
**worries**
5:9
**wouldn't**
8:13, 39:3
**wrap**
58:5
**written**
28:13
**wrongful**
27:21
**wrongfully**
32:17

**Y**

**yeah**
15:21, 60:7
**year**
12:4, 12:9, 12:16, 14:11
**years**
8:6, 8:16, 8:19, 9:1, 9:3, 16:6
**yelling**
44:7
**youngest**
8:5
**yourself**
17:2, 49:20

**Z**

**zoom**
1:15, 5:13

**$**

**$10**
14:2
**$100**
14:2

**0**

**01861**
1:8

**1**

**10**
1:17, 4:9, 4:18, 57:16, 57:18
**1013**
3:16
**11**
4:19, 58:11, 58:14
**12**
8:4, 51:10, 60:15
**125,000**
14:6, 14:10
**12524**
7:16
**13**
21:9, 21:22, 22:15
**135,000**
11:21
**14**
8:3
**16**
28:11
**17**
28:4
**18**
55:15
**19**
59:18
**1900**
3:8
**1:-cv--ckk**
1:8

**2**

**20**
4:10, 16:9, 21:9, 21:22, 22:15, 56:14, 59:18
**2001**
3:5
**20024**
3:15
**20036**
3:7
**2004**
9:13
**2005**
19:5
**2007**
7:19
**2010**
19:10
**2012**
8:6, 8:8, 9:5
**2013**
4:11, 4:12, 21:9, 21:22, 22:15
**2014**
23:17, 23:21, 24:7
**2015**
26:7, 27:1, 27:13, 29:6, 29:14, 29:15, 30:6, 32:13, 32:22, 45:10, 48:18, 49:5, 51:10, 55:3, 55:8, 55:13, 55:15, 55:19, 56:2, 56:10, 56:15, 56:19, 56:22, 58:1, 59:18, 59:19
**2019**
10:18
**202**
3:8, 3:16
**2020**
16:9, 16:10, 16:11, 16:12, 16:21
**2021**
18:8, 18:9
**2022**
12:8, 12:16, 14:20, 15:1
**2023**
1:16, 62:15
**2026**
62:16
**21**
1:8, 4:11, 4:12
**22**
4:13, 10:18
**22192**
7:17
**23**
1:17, 4:14
**24**
1:16, 62:14
**26**
4:15
**28**
4:16, 26:7

**3**

**300**
3:14

**4**

**492068**
1:20

**5**

**54**
4:17
**57**
4:18
**58**
4:19

**6**

**62**
1:21

**7**

**787**
3:8
**7th**
3:14

**9**

**90,000**
15:15
**902**
3:6
**962**
3:16