**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **AMANDA BETTS,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 1:21-cv-01861 CKK** |
| **WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,** | |
| **Defendant.** | |

**WMATA'S OBJECTIONS UNDER LOCAL RULE 72.3(B) TO THE REPORT AND RECOMMENDATION OF 7/17/2026**

WMATA, by and through counsel, hereby submits its written objections to the report and recommendation made on July 17, 2026, by Magistrate Judge Upadhyaya ("Report"), for the reasons stated herein.

Plaintiff' filed her Complaint (ECF # 1) on July 12, 2021. WMATA filed a motion to dismiss and/or for summary judgment. (ECF # 7). On August 10, 2022, the District Court partially granted WMATA's Motion to Dismiss as to certain elements of Plaintiff's claims. *See* Order, ECF # 10, at 2-3. The District Court referred the motions to Magistrate Judge Upadhyaya on December 1, 2025, for a report and recommendation. ECF # 27. Judge Upadhyaya issues a Report and Recommendation on July 17, 2026, ECF # 28 ("Report").

There are two key issues to which WMATA objects in the Report. The first is the finding that Plaintiff's Second Charge, as amended ("Second Charge"), included race and sex discrimination in its scope, despite Plaintiff not having checked the boxes for either race discrimination, sex discrimination, or having made any reference to race or sex or facts which

evoked race or sex, in the Charge's narrative at the time of Plaintiff's initial filing, or at the time of the amendment. *Id* at 8-9; Second Charge, ECF # 23-5. WMATA argued that the scope of Plaintiff's Second Charge encompassed retaliation only, based on the Court's prior rulings, winnowing out claims and alleged adverse actions, also based on the language of the Second Charge itself. Def. Motion, ECF # 23-1 at 3. The Second Charge Form itself only alleges hostile work environment and retaliation; the District Court dismissed the hostile work environment claim in its prior order. *See* Order of August 10, 2022, ECF # 10 at 34-6.

Plaintiff's Am. Second Charge does not reference race or sex discrimination in any form. The Report, however, inferred that race and sex discrimination were included in the scope of Second Charge by conjoining and interpreting the meaning and scope of the Second Charge in conjunction with the First Charge, because the boxes for "continuing action" were checked on both the First and Second Charge Forms. Report at 8-9. Essentially, the Report found that the sex and race discrimination claims of a poor performance evaluations from the First Charge – a discrete act which can only occur on the day that it happened - essentially flowed to the Second Charge as a continuing action. This interpretation is contrary to *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002) and *Park v. Howard Univ.,* 71 F.3d 904, 907 (D.C. Cir. 1995).

The second issue is that the Report relied on the arbitration factual findings -- hearsay evidence, and inadmissible for multiple reasons (different legal framework of contractual "just cause;" different evidentiary standards) – to function as pretext to overcome WMATA's legitimate, non-discriminatory reasons for its employment actions. Furthermore, because the Report improperly concluded race and sex discrimination to be viable causes of action in this case, the resulting analysis given to the relevance and import of the arbitration factual findings, even assuming the findings are admissible, is incorrect. The Report relied on an interpretation of pretext

2

that is relevant only under the permitted mixed motive standard for race and discrimination evidence. The Report did not review any of the evidence from the but-for causation requirement in a retaliation case. To the extent, the WMATA sets forth its written objections more fully below.

I.      **WMATA Objects To The Report's Determinization That Plaintiff's Amended Second Charge Includes Claims of Sex and Race Discrimination**

 Plaintiff's Second Charge Form 5, filed first on January 30, 2014,  and later amended on March 18, 2014, originally alleged  two adverse actions:  (1) a low performance evaluation on March 14, 2013; and (2) discipline on April 12, 2013. *See* ECF 23-5.

When filling out the form, Plaintiff did <u>not</u> check the boxes for "race" or for "sex;' instead she checked the boxes for retaliation and "other (hostile work environment)," as well the box for "continuing violation."  In contrast, when she filled out her First Charge of April 29, 2013, just ten months earlier, Plaintiff affirmatively checked the boxes for race, sex, retaliation, other (hostile work environment) and also "continuing violation." ECF # 23-4.

Within the narrative of the Second Charge, Plaintiff does not mention anything pertaining to race or sex discrimination, but she twice uses the word 'retaliation' when describing her belief that the alleged subpar performance of March 14, 2013, along with the discipline was based on retaliation: (1) "I believe I was retaliated against based on being a witness;" and  (2) "I believe I was retaliated against for engaging in protected activity […]"). *See* ECF # 23-5. There are no words in the Second Charge that directly or indirectly raise the issue of  race or sex. *Id*. In contrast, in her *First* Charge, filed ten months earlier, Plaintiff alleged that her subpar performance evaluation of March 14, 2013 (the same performance evaluation she re-alleged ten months later in her Second Charge) was causally related to her informing WMATA that she was pregnant, and therefore pertaining to sex discrimination. *See* ECF # 23-5.

The District Court struck the March 14, 2013, performance evaluation and the April 12, 2013, discipline as untimely. *See* Order, ECF # 10. The District Court held that both employment actions occurred outside the 180-day period, which ended on August 3, 2013. *Id*. at 20, 21. Plaintiff amended her Second Charge on March 18, 2014, to include her February 20, 2014, suspension and her termination on March 16, 2014. ECF # 23-5. Plaintiff did not take the opportunity to check the boxes for race discrimination or sex discrimination when she amended, nor did she provide any additional narrative beyond a brief description stating that she was suspended on February 20, 2014, and terminated on March 16, 2014. Second Charge, ECF # 23-5.

The Magistrate Judge relied on two elements of the Second Charge to incorrectly find race and sex discrimination were included in the that charge: (1) the untimely March 14, 2013, performance evaluation and (2) the checked box for 'continuing violation.' Report, ECF # 28 at 8-9. The March 14, 2013, subpar evaluation is untimely in the Second Charge because it is a discrete act, which occurs on the day it happened. *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 ( 2002)*.* It cannot be used assert a continuing violation theory. *Id.*

A.  Plaintiff's Amended Second Charge Is Limited To Claims Of Retaliation

Plaintiff filed her Second Charge stating claims of retaliation and hostile work environment and nothing else. *See* Second Charge, ECF # 23-5. The District Court dismissed the hostile work environment claim, leaving a Second Charge that exhausted the claim of retaliation only. Order, ECF # 10. The Report incorrectly 'infers' claims of race and sex discrimination where none exists either upon examination of the Charge itself or upon application of controlling precedent.

1.  *There Are No References to Discrimination on the Second Charge Form.*

4

If Plaintiff meant to include race and sex discrimination in the Second Charge, the record is clear that she was capable of, and knowledgeable about, how to do so. *"I have been harassed and treated differently than males and non-pregnant employees* with respect to requests for transfers to … assignments, surrender of service weapon and unfair performance evaluations." *See* First Charge, ECF # 23-4 .  Plaintiff checked the boxes on the First Charge form for: (1) race; (2) sex; (3) retaliation; (4) hostile work environment; (5) disability and (6) continuing action. Plaintiff was pregnant at the time of her First Charge and alleged that she was treated differently due to her pregnancy, a sex-based claim of discrimination. While she does not include *any narrative* regarding her claim of race, she did *check the box* for race, so the form would have given notice to the EEOC about the scope the investigation should undertake.

In her Second Charge, ten months later, Plaintiff checked the boxes for retaliation, hostile work environment and "continuing action," but nothing else. ECF # 23-5. She makes no mention of the words "race," or "sex," nor does describe any facts or *beliefs* related to race or sex as she did in her First Charge. Rather, her "belief" about any unlawful act focused solely on retaliation. "I believe I was retaliated against for engaging in protected activity…" *Id.*

No factual basis exists for the Report's assertion that, although Plaintiff failed to check the boxes for race and sex, Plaintiff otherwise provided a narrative description of race and sex discrimination which allowed the Magistrate Judge  find that Plaintiff exhausted her race and sex discrimination claims. Report, ECF # 28 at 9.

In a case with issues and facts similar to this case, a District Court in this circuit ordered that several Title VII claims asserted by plaintiff could not proceed and that the plaintiff was limited to his claim of retaliation, because:  (1) plaintiff had checked the box for retaliation on his EEOC charge, but no other boxes; and (2) his narrative only set forth his "belief that he was

5

terminated in retaliation for filing a previous EEOC charge of discrimination." *See Maryland v. Sodexho, Inc.*, 474 F.Supp.2d 160, 162 (D.D.C. 2007). Here, too, where Plaintiff checked only the boxes for retaliation, hostile work environment, and continuing action, and with a narrative description identifying retaliation as her causal reason for the employment actions, the District Court must arrive at the same conclusion as the court did in *Maryland v. Sodexho*.

> 2. Binding Supreme Court and D.C. Circuit precedent prohibit the expansive "building on" theory asserted in the Report.

It is the charge itself, and not a plaintiff's complaint which controls the scope of a discrimination claim. *See Park v. Howard University*, 71 F.3d 904, 907 (1995) (the substance of Title VII claim must fall within scope of administrative investigation reasonably expected to follow the EEOC charge of discrimination). The Report errs factually (*See* Section I.A.1, *supra*) and, as a matter of law by determining that the Second Charge includes the claims of race and sex discrimination.

In order to find that race and sex discrimination in the Second Charge without the Charge form having any such boxes checked and without any narrative sounding in discrimination, the Magistrate Judge asserted a theory that Plaintiff was "building on" on her First Charge when she filed her Second Charge. The "building on" inference was constructed from the fact that Plaintiff checked the "continuing action" box on her Second Charge, in conjunction with Plaintiff's re-alleging a now-stale, untimely allegation of a March 14, 2013, subpar performance evaluation, already mentioned in her First Charge ten months earlier. This performance evaluation was dismissed as untimely by the District Court's Order of August 10, 2022 (ECF # 10) by the time the case was referred to the Magistrate Judge.

The 'building on" inference  allows for an expansive reading and interpretation of the scope of Plaintiff's Second Charge in a manner not recognized by controlling Circuit precedent.

This interpretation would allow discrimination claims from the First Charge to flow to the

Second Charge, even if the discrimination claims are not named or alleged in the Second Charge.

*In Park v. Howard Univ.,* 71 F.3d 904, 907 (D.C. Cir. 1995), the D.C. Circuit explained

that:

> Title VII claims must arise from the "administrative investigation that can reasonably be expected to follow the charge of discrimination. (internal citations omitted). There are two important purposes to the EEOC's administrative charge: (1) giving the charged party notice of the claim and (2) narrowing the issues for a prompt decision. (internal citations omitted). "A court cannot allow liberal interpretation of an administrative charge to permit a litigant to bypass the Title VII administrative process." *Id*. (citing) *Ostapowicz v. Johnson Bronze Co,* 541 F.2d 394, 398 (3rd Cir. 1976).

*Id*.

In the Report significance was distilled from Plaintiff (1) checking the "continuing

action" box in the Amended Second Charge and (s) mentioning the same March 2013

performance evaluation that was raised in the First Charge, which was untimely in the Second

Charge. Plaintiff, without checking any box for discrimination or naming it by describing it, if

this expansive interpretation of exhaustion were allowed, could bypass the Title VII

administrative process prohibited by *Park, supra.* Many questions arise when considering this

theory: (a) how, in the "building on" inference process, should the EEOC  understand the scope

of administrative investigations that must be undertaken? ; (b) how would the EEOC know if

they arrived at the proper inference to "build on" a prior charge?; and, (c)  how is the charged

party to understand the proper inference between charges, or even, to have notice of a claim at

all? This theory of building inferences between charges based on a checked box for a

"continuing action" is not the legal standard under *Park*, nor is it the standard under controlling

Supreme Court precedent.

In *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 ( 2002)*, the *Morgan* Court reversed the 9th Circuit when it applied a "continuing violations doctrine" to discrete discriminatory acts. *Id*. Because acts of discrimination are defined as discrete acts, they occur on the day that they happen; by their nature, they are not "continuing actions." *Id.*

Here, allowing an inference to be drawn that Plaintiff's race and sex discrimination claims, which are discrete acts, have transferred from her First Charge to her Second Charge because of the checked box for "continuing action" runs afoul of the Morgan court's prohibition against using a continuing violation theory with discrete acts of discrimination. *Id*. It is the theory used by the 9th Circuit, overturned by the *Morgan* Court and contrary to over two decades of established Title VII precedence. *Id*

The *Morgan* Court limited 'continuing actions' to hostile work environment claims, which are different in kind from discrete acts of discrimination, because they cannot be said to occur any "particular day. *Id*. at 115. Pursuant to *Morgan*'s holding, Plaintiff's "continuing action" claim would be applicable only to her hostile work environment claim, which was dismissed by the District Court's Order of August 10, 2023. ECF # 10 at 36.

Wherefore, for the reasons stated herein, Defendant WMATA takes exception to the finding in the report that Plaintiff's Amended Second Charge included claims of discrimination.

B. <u>WMATA Objects To The Report Relying On Hearsay Evidence Of Pretext From The Untrustworthy Arbitration Decision Which Does Not Meet The "But-For" Legal Standard Of Causation Required For Retaliation Claims</u>

The Arbitration Decision lacks many indicia of trustworthiness and for reasons stated herein, WMATA objects to the Report relying on this hearsay evidence for the purpose of proving pretext. At summary judgment, Rule 56(c)(4) states that an affidavit or declaration used to support and oppose a motion "must be made on personal knowledge, set out facts that would

be admissible in evidence, and shall show that the affiant or declarant is competent to testify on the matters stated." *Id.* Also, "a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." *Id.* at 56(c)(2). WMATA objects to this Arbitration Decision, which does not meet the standards of admissibility.

In *Gleklen v. Democratic Congressional Campaign Committee, Inc.*, 199 F.3d 1385 (D.C. Cir. 2000), a plaintiff appealed the grant of summary judgment where she had presented hearsay evidence regarding what someone told her about conversation between two other people about the reason plaintiff was terminated. In ruling that the evidence was meaningless, the D.C. Circuit stated: "Verdicts cannot rest on inadmissible evidence. [Plaintiff's] evidence about the conversation is sheer hearsay; she would not be permitted to testify about the conversation at trial. See Fed. R. Evid. 801-807. It therefore counts for nothing." *Id.* at 358.

Hearsay evidence is not admissible under Rule 56, yet that is precisely what the Report relies on for its finding and recommendation that Plaintiff produced evidence of pretext sufficient to rebut WMATA's legitimate, non-discriminatory reasons for Plaintiff's suspension and termination. Report, ECF # 28 at 16-19. Allowing hearsay evidence to defeat a motion for summary judgment would undermine the objective of summary judgment – to prevent unnecessary trials. *Gleklen,* 199 F.3d at 358.

Findings of facts from another case are inadmissible hearsay. *See United States v. Jones,* 29 F.3d 1549, 1554 (11th Cir.1994) ( "a court may take notice of another court's order only for the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter of the litigation"); *see also Nipper v. Snipes,* 7 F.3d 415, 418 (4th Cir.1993). In *Taylor v. WMATA*, when a plaintiff in this circuit sought to introduce evidence in his Title VII

discrimination case regarding findings about WMATA in a different discrimination case, the *Taylor* court at trial disallowed and struck plaintiff's evidence the findings by the other court: "[w]hile the Court may take note that WMATA was or is a defendant in other discrimination or retaliation cases, the Court cannot transpose the factual findings of another judge or jury into the framework of this case. *Taylor v. Washington Metropolitan Area Transit Authority,* 922 F. Supp. 665, 675–76 (D.D.C., 1996)

Similarly, in *Hairston v. Washington Metropolitan Area Transit Authority,* 1997 WL 411946, at \*1–2 (D.D.C.,1997), another court of this circuit came to the same conclusion. The Hairston Court reviewed the reasoning of the Fourth Circuit in *Nipper, supra* with approval, noting that the "Fourth Circuit concluded that judicial findings of fact in a court's order are not admissible in another case under Rule 803(8)(C) . . . [and] . . . found that the exception was not meant to cover judicial findings of fact." *Id*. Additionally, "such evidence should also be excluded under Fed.R.Evid. 403, because "judicial findings of fact 'present a rare case where, by virtue of their having been made by a judge, they would likely be given undue weight by the jury, thus creating a serious danger of unfair prejudice.'" *Id*. (internal citations omitted).

The Report acknowledges that Betts "relies heavily" on an arbitration opinion and award that she submitted as an exhibit to show pretext. Report, ECF # 28 at 18. Instead of discounting the Arbitration Award's conclusions as the "sheer hearsay" that "counts for nothing" as *Gleklen* instructs, the Magistrate Judge held that the Arbitration award was to be viewed credibly and that the court should draw all justifiable inference in Plaintiff's favor based on the Arbitrator's findings.

The Report cited to *Alexander v. Gardner-Denver Co*., 415 U.S. 36, 49 (1974), as the authority for admitting the arbitrator's findings of fact into evidence; however, that case may be

distinguished from the facts and issues here. The posture of *Denver-Gardner* involved the trial court finding that the plaintiff had elected his remedy by first pursuing his rights under his CBA's nondiscrimination clause and so could not pursue his Title VII statutory rights in federal court. The Supreme Court held that the plaintiff did not forfeit his private Title VII rights by first pursuing his arbitration rights. *Id*. at 51. In light of the overlapping issue between an arbitration being held and determined on the issue of discrimination, and a related Title VII trial in federal court, the Supreme Court held that the arbitration **decision** (not the arbitration's factual **findings)** may be admitted into evidence and accorded such weight as the trial court deemed appropriate. *Id.* at 59.

As the Supreme Court noted in *Denver-Garnder,* an arbitrator is tasked with effectuating the contractual intent and rights of the parties – not the requirements of Title VII law, and further, an arbitrator applies the law of the shop, not the law of the land. *Id*. at 57. Moreover, the "factfinding process in arbitration usually is not equivalent to judicial factfinding" and the "usual rules of evidence do not apply." *Id*.

Regarding what weight – if any – should be accorded an arbitral decision, the Court stated:

> We adopt no standards as to the weight to be given an arbitral decision, since this must be determined in the court's discretion with regard to the facts and circumstances of each case. Relevant factors include the existence of provisions in the collective-bargaining agreement that conform substantially with Title VII, the degree of procedural fairness in the arbitral forum, adequacy of the record with respect to the issue of discrimination, and the special competence of particular arbitrators. Where an arbitral determination gives full consideration to an employee's Title VII rights, a court may properly accord it great weight. This is especially true where the issue is solely one fact, specifically addressed by the parties and decided by the arbitrator on the basis of an adequate record. But courts should ever be mindful that Congress, in enacting Title VII, thought it necessary to provide a judicial forum for the ultimate resolution of discriminatory employment claims. It is the duty of courts to assure the full availability of this forum.

*Id.* at 60, n.21.

Betts did not pursue a labor dispute based on a purported violation of the nondiscrimination clause of her CBA at her arbitration hearing, as the plaintiff did in *Gardner-Denver*. one of the *Gardner-Denver* factors that negates relying on the decision as evidence. Betts' arbitration is not related to Betts' remaining claim of retaliation (as argued, *supra*.). The issues raised in Betts arbitration was whether there was "just cause' for Betts' termination under the CBA. Arb. Decision, ECF 7-4 at 3. There is no evidence of any special competence by this arbitrator in the area of Title VII or pretext.

The Report relies on the extra-judicial, hearsay decision from a single person[1] ( not a "panel" as the Report incorrectly states) who offered generalized and often unsubstantiated written conclusions at the end of an arbitration hearing, based on inaccurate evidence and unclear legal standards, such as: "the Union's suggestion that the Employer knew of the Second Charge is likely true." ECF # 7-4 at 8,9.  This arbitration finding is one of the four findings from the Arbitration decision upon which the Magistrate Judge relied to conclude that Plaintiff met her burden of showing pretext/ Report, at 18, ECF # 28. This particular finding is also the *only one* of the four findings cited in the Report that arguably has any relevance for proving some causal relationship between Plaintiff's suspension and termination. See *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 350-51 (2013).This fourth arbitral 'finding' lacks all indicia of trustworthiness when the evidence which underpins the finding is closely examined.

---

[1] Dan Pribich was WMATA's Principal Labor Advisor who represented WMATA at the arbitration.  *See* Dan Pribich Declaration, ECF #23-30 at 1, 4.  Under the FOP CBA, there is a requirement of a 3-person arbitration panel, composed of an arbitrator selected by WMATA, an arbitrator selected by the Union  and a neutral arbitrator. *Id*. at 5,6.  The arbitrator, David Vaughn, was the decisionmaker who wrote the decision. *Id*. at 8.

To arrive at his conclusion, the arbitrator reviewed  an "EEOC letter" (not in evidence in this Court) dated "January 3, 2014" sent to Plaintiff, stating that because the Plaintiff has submitted a Charge of Discrimination, "we have complied with the law and notified the *employer* that you filed a charge."  Arb. Decision, ECF 7-4 at 8-9. Plaintiff's did not file her Second Charge until January 30, 2014. ECF # 23-5. It is not known what information or evidence the Arbitrator relied on for a finding that there was a "Second Charge" filed on January 3, 2014, almost one month prior to the Second Charge in evidence before this Court. WMATA has serious concerns based on this contradiction alone, where this is a record of evidence relied on the arbitrator different from that before this Court.

WMATA's concerns do not stop there. The arbitrator made conclusions about knowledge that does not rise to the legal standard regarding causation in a retaliation claim. The arbitrator concluded the employer, i.e., WMATA –  (**not** Chief Pavlik, the decisionmaker in this matter) – likely knew about Plaintiff having filed a Second Charge date January 3, 2014. First, WMATA is a large interstate compact agency comprised of some 13,000 employees in various offices and departments. WMATA has an EEO office that works with the EEOC. *See* Exhibit 29, p.1. In this case, Chief Pavlik was the ultimate decisionmaker regarding Plaintiff's suspension and termination. *See* ECF # 23-14 at  27. Chief Pavlik did not learn of Plaintiff's Second Charge, filed on January 30, 2014, until he was notified, on April 8, 2014, by James Wynne of WMATA's Equal Opportunity Employment office, that Plaintiff had filed an external complaint with the EEOC. *See* Exhibit 29, p.1.  Chief Pavlik states that he learned of Plaintiff's EEOC Complaint on April 8, 2014, one month after Plaintiff was terminated. *Id*. at  2.

Chief Pavlik therefore did not know about Plaintiff's Second Charge at the time he decided to terminate her. Betts is the ***only officer ever known to have refused to submit to and***

***cooperate with an investigation by MTPD's Office of Professional Responsibility and Inspections (OPRI").*** *See* Pavlik Decl., ECF # 23-14 at ¶ 25;.*see also*  MTPD Oath of Office, OPRI Investigation, ECF # 23-27, at WMATA000351. A police department is an agency that follows a hierarchical structure and adheres to chain of command. Plaintiff refused direct orders and refused to cooperate in the investigation, --an unheard-of response in police department.

WMATA objects to the admission of the Arbitration award, with its conclusory statements that do not rise to the level of evidentiary causation needed for a Title VII matter in District Court. It is the decisionmaker, Chief Pavlik, that needs knowledge of the protected activity, not one of the 13,000 WMATA employees.

Further, the Arbitration decision makes other unsupported, conclusive findings such as that Plaintiff had made negative statements about "everyone in her chain of command." ECF # 7-4 at 36. Again, the record evidence does not support his finding, and the arbitrator misconstrued the testimony from the arbitration hearing. The evidence in this record is Chief Pavlik  - the ultimate person in Betts chain of command -became Chief in April 2013 and in May 2013, as the new police chief, when handling Betts' grievance, he ordered that Betts performance evaluation be changed from a final evaluation to a 90-day evaluation, which is an interim evaluation; he also ordered that her written dereliction be removed from her record *See* ECF # 23-14 at 13-21. In the hearing, Betts agreed that Chief Pavlik  rescinded her dereliction. ECF # 23-28 at 195. She also testified that her interactions with Chief Pavlik arose soon after he became Chief, in the context of the grievance that started under Chief Taborn, and she had no further interactions with him, before or after he became Chief. *Id.* at 201.

Nonetheless the Arbitrator asserts the facile conclusion that Betts had  complained and had concerns generally about  "management." Report at 19, ECF # 28. The Arbitrator also

confuses the evidence when he includes Plaintiff's statement to OIG and OPRI as "complaints" – these were statements that Plaintiff was required to give as part of an investigation into the actions of a certain division (CID) within MTPD, where everybody was interviewed. See ECF # 7-4 at 36; ECF # 23-16, Taborn response to EEOC, p.1.

WMATA objects to the admission into evidence of the Arbitration decision. As noted by the Magistrate Judge, courts in this jurisdiction have recognized the potential for risk and confusions in allowing an arbitration decision into evidence, where a jury's own determination of the elements of a case and the credibility of witnesses would likely be prejudicially influenced by the arbitrator's decision. *See Amobi v. Brown*, 317 F.Supp.3d 29, 38 (D.D.C. 2018).

Most importantly the Report does not account for did the "but-for" proof of causation required for an alleged retaliatory employment action. *See Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 350-51 (2013). "Mixed-motive" evidence is insufficient to sustain a retaliation claim. *Id.* Betts does not have direct evidence of a causal relationship, so she must prove temporal proximity between the employer's knowledge of her protected activity and the adverse employment action. *Rattigan v. Gonzales*, 503 F.Supp.2d 56, 76-77 (D.D.C. 2007). The Arbitration decision with its uncertain and weak evidentiary standards and unsupported conclusions does not meet that standard. Even if it did, this Court should bar it from evidence for all reasons stated herein or for those reasons which could be developed further and in greater deal *in limine*, as the Report recommends.

## CONCLUSION

Defendant respectfully submits its objections to the Report of July 17, 2026, and request that a finding that the Second Charge exhausted a claim of retaliation only, and that Plaintiff did

15

not meet her burden of proof in showing pretext, because the Arbitration Decision must be

excluded under Rule 403 and/or under the standards set forth in *Denver-Gardner* and for the

reasons set forth herein.

Respectfully submitted,

*/s/ Janice L. Cole*

Janice L. Cole  (#440351)
**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY**
Senior Counsel II
300 7th Street, S.W.
Washington, D.C. 20024
T: (202) 962-2543; C: (202) 604-1833; F: (202) 962-2550
jlcole@wmata.com
*Attorney for WMATA*

**CERTIFICATE OF SERVICE**

I certify that on July 31, 2026, a copy of WMATA's Objections to the Report and

Recommendation of July 17, 2026, was served *via* the court's electronic filing system on

counsel of record, Donna Rucker.

*/s/ Janice L. Cole*
Janice L. Cole